**AMERICAN MOTORISTS INSURANCE COMPANY, Plaintiff in Error,**

v.

**Roy F. BIGGS and Myrtle Biggs, Defendants in Error.**

**No. 39610.**

Supreme Court of Oklahoma.

April 16, 1963.

Alfred B. Knight, Tulsa, for plaintiff in error.

Dale J. Briggs, Tulsa, for defendants in error.

WILLIAMS, Justice.

The question to be determined here is whether a policy of insurance covered an additional automobile purchased by the insured under circumstances hereinafter developed. We hold it did.

On August 19, 1958, a Ford automobile driven by Oris C. Hoffman, Jr., was involved in an accident. Subsequently defendants in error, hereinafter referred to as plaintiffs, obtained a judgment against Mr. Hoffman, Jr., for the death of their daughter in such accident. After execution had been issued against Mr. Hoffman, Jr., and returned unsatisfied, plaintiffs instituted garnishment against American Motorists Insurance Company, hereinafter referred to as garnishee, and from an adverse judgment the garnishee appeals.

On June 20, 1958, garnishee, using information previously obtained by its agent, A. F. Phillips, had issued its family automobile insurance policy to Oris C. Hoffman, Sr. The coverage under this policy be-

came effective August 2, 1958. Two Plymouths were listed in the policy as the total number of automobiles owned by Mr. Hoffman, Sr., on the effective date thereof. At the time of the issuance of such policy, Mr. Hoffman, Sr., had with another company, a similar policy which expired August 28, 1958. Such company has paid one-half of the judgment against Mr. Hoffman, Jr.

In the trial court the plaintiffs' evidence was to the effect that on July 29, 1958, Mr. Hoffman, Sr., purchased the Ford automobile herein involved, and took title in his name; that it was owned by him; that he made the down payment on the purchase price and borrowed the balance for which he executed a chattel mortgage thereon; that Mr. Hoffman, Jr., intended to take the automobile to California where he was stationed in the Navy if liability insurance could be obtained in his name; that Mr. Hoffman Sr. notified defendants policy-writing agent, Mr. A. F. Phillips, of the newly acquired automobile and sought his assistance in obtaining liability coverage in his son's name; that Phillips advised that he couldn't write such coverage and suggested that the son make application with the assigned risk program; that on August 19, 1958, such application had been made but coverage had not been effected nor premium paid.

Garnishee's evidence was to the effect that Mr. Hoffman, Sr., did not discuss with A. F. Phillips the adding of the Ford to garnishee's policy; that Mr. Hoffman, Sr. in a signed statement admitted that the Ford was purchased for his son; that the son located such automobile on a used car lot; that the father drove it only one or not more than two or three times prior to the accident; that the sales manager for Phillips told the son that he would not have coverage for approximately ten days, until such was provided by the assigned risk program; that he advised the son not to drive the car until he had coverage.

For reversal, garnishee advances three propositions. The second such proposition

is as follows: "The determination that the 1953 Ford was owned by Mr. Hoffman, Sr., is contrary to the evidence and law." In a statement signed by Mr. Hoffman, Sr., there appears the following language:

> "My son, Oris C. Hoffman, Jr., * * * came on a furlough and he wanted to purchase an automobile. We decided that I would buy the car for him and put it in my name and obtain liability insurance for him. * * * At the time of the accident * * * the 1953 Ford was titled in my name but it was purchased solely for my son, Oris, Jr. I had driven it one time (I believe). * * * The finance arrangements were made in my name, however my son was going to repay me for the automobile. After the liability policy was written, we were going to turn the title to the car over to Oris, Jr."

Garnishee states that "we must first draw the conclusion that Mr. Hoffman, Jr., did not have the credit or the purchasing power to finance the automobile. Thus, the father would have to secure the financing through the use of his credit." There is no evidence that the son could not have secured financing for the purchase of the Ford. The testimony in this regard as developed on cross-examination of Mr. Hoffman, Sr. was as follows:

> "Q: Now, when you bought this car, was there any finance company that would loan money to your son?
>
> "A: I don't know whether there were or not—didn't try.
>
> "Q: Don't you know that a finance company would not loan money to your boy who was in the Navy?"
>
> "A: I didn't know about it.
>
> "Q: Didn't you make inquiry?
>
> "A: No, sir."

Garnishee argues that " * * * the son filled out the application for the Assigned Risk Plan for insurance in his name; every conversation referred to in the entire testimony with reference to obtaining in-

surance coverage specifically dealt with the subject of Oris, Jr., obtaining insurance coverage." The father and son both testified that it was necessary for the son to have liability insurance in his name in order to be permitted to take the automobile upon the naval base. It perhaps would have been noteworthy if in such application Mr. Hoffman, Jr., had stated that he was the owner of the automobile. However, although the completed application was given to Phillips for mailing, the garnishee did not offer it in evidence.

In the case of Downey v. Brocsamle, 91 Okl. 81, 215 P. 1055, we said:

"The witnesses were before the court * * *, he heard their testimony, and had a better opportunity to determine the truthfulness of their statements than we could have under any circumstances * * *. The court resolved the matter in favor of the plaintiffs and his finding on the disputed question of fact will not be disturbed here."

In the case of Sparks v. Midland Supply Company, Okl., 339 P.2d 1056, 1059, is the following language:

"It is a well-established rule of this court that where an action of legal cognizance is tried without a jury, judgment will be given same effect as verdict of properly instructed jury, and same will not be reversed if there is any evidence reasonably supporting the judgment. Continental Supply Co. v. Dickson Oil Co., 194 Okl. 660, 153 P.2d 1017."

We have reviewed all the evidence in this case and we find that there was evidence reasonably supporting the determination that the Ford was owned by Mr. Hoffman, Sr.

Garnishee's first proposition is that "The policy of insurance issued by American Motorists Insurance Company does not afford coverage for the 1953 Ford." Garnishee contends that "The only remote or possible contention that could be made would be under the theory of 'newly ac-

quired vehicle' * * * The vehicle was not acquired during the policy period."

Under the provision of the policy, "Definitions", an " 'owned automobile' means a private passenger, farm, or utility automobile or trailer owned by the named insured, and includes a temporary substitute automobile;".

There is no language in that part of the policy entitled "Exclusions" nor under any other provision of the policy to the effect that coverage under such policy is limited to the operation of automobiles specifically described therein or those owned on the effective date of such policy.

Under that part of the policy entitled "Conditions" is the following language:

"2. Premium. If the named insured * * * acquires ownership of * * * a private passenger * * * automobile * * * he shall inform the company during the policy period of such change. Any premium adjustment necessary shall be made as of the date of such change. * * * The named insured shall, upon request furnish reasonable proof of the number of such automobiles or trailers and a description thereof."

The foregoing paragraph "2" under "Conditions" does not limit coverage to the operation of vehicles shown on the policy or those acquired after issuance of the policy. The requirement is that if another vehicle is acquired the company is to be so advised during the policy period. Pursuant to the provisions of garnishee's policy here in question, Mr. Hoffman, Sr., reported the acquisition of the Ford within the time prescribed therefor in such policy.

The premium for the policy was governed by the number of automobiles owned by the insured and not insured with another company. For its protection in collecting additional premiums on automobiles acquired by the insured and not listed on the policy, it was necessary for garnishee to require that notice be given it during the policy period of any such acquisition and that it

have the right to request proof of the number of automobiles owned by the assured. The purpose of such provisions was to allow the garnishee to make any premium adjustments thereby necessitated. See Ash-Grove Lime and Portland Cement Company v. Southern Surety Company, 225 Mo. App., 712, 39 S.W.2d 434.

In County Fire Ins. Co. of Philadelphia v. Harper, 207 Okl. 359, 249 P.2d 705, in the first paragraph of the syllabus, this court said:

"Contracts of insurance will be liberally construed in favor of the object to be accomplished, and conditions and provisions of every contract of insurance will be construed against the insurer who proposes and prepares the policy. If a policy of insurance and provisions in connection therewith are capable of being construed in two ways, that interpretation should be placed upon them which is most favorable to the insured." See also 44 C.J.S. Insurance § 297c(1).

No contention is made that the garnishee's liability, if any, to Mr. Hoffman, Jr., is not the same as that to his father. Mr. Hoffman, Jr., at the time of the accident on August 19, 1958, was covered under the liability provisions of the father's policy with garnishee.

Garnishee's last proposition is that "The American Motorists Insurance contract must be reformed to express the true intention of all parties; if coverage is afforded, which is denied, it is only by a mutual mistake of all parties."

Garnishee contends that "* * * the Hoffmans have not in any manner attempted to obtain coverage with American Motorists after the mutual understanding of all parties was that American Motorists would not afford coverage to Hoffman, Jr. If the Supreme Court would possibly consider that coverage was afforded by the terms and provisions of the American Motorists policy then the policy must be reformed to express the true intent of the parties which was that American Motorists would not afford coverage under the circumstances."

In Haggard v. Calhoun, Okl., 294 P.2d 836, 840, we said:

"Haggard and the insurance carrier asserted that to justify reformation of a written contract, the proof must be full, clear and unequivocal and sufficiently convincing to establish the facts to a moral certainty. This is a correct statement of the rule of law."

In 76 C.J.S. Reformation of Instruments § 3 pp. 328, 329, is the following language:

"The power to reform an instrument is an extraordinary one whose exercise must be guarded with zealous care, and exercised with great caution. Thus, equity is slow and cautious in the exercise of this power, and will grant reformation only in a clear case of fraud or mistake."

In 53 C.J. Reformation of Instruments § 30D, p. 924, the author writes that:

"The right to reform an instrument, is not absolute. It is discretionary with the court and depends upon whether under all the circumstances the remedy is essential to the ends of justice." See also 76 C.J.S. Reformation of Instruments § 17, page 342.

The testimony indicated that because of the regulation of the Navy requiring liability insurance in the name of naval personnel operating an automobile on a naval base, liability coverage in the son's name was sought. However, there is no evidence that Mr. Hoffman, Sr., did not desire that the liability coverage under garnishee's policy should extend to his and his family's operation of the Ford, at least until the son could obtain insurance. It is true that he sought liability coverage in his son's name, but he also testified that the Ford would have remained at his home until the son had procured liability insurance.

Mr. Hoffman, Sr., had not purchased the Ford when garnishee's policy was issued,

but he did secure it before the effective date of the policy. There is no evidence that when garnishee's policy was issued a month and a half prior to the effective date thereof, that Mr. Hoffman contemplated purchasing the Ford. The subject was not discussed. Prior to the effective date of the policy there was no agreement excluding the Ford from garnishee's policy. There was no agreement, oral or written, between Mr. Hoffman, Sr., and the garnishee, either before or after issuance of garnishee's policy which would limit the coverage of said policy to the automobiles described in such policy, nor was there any agreement to exclude the son from the coverage of said policy.

In 53 C.J. Reformation of Instruments § 31E pp. 924, 925, is the following language:

"There can be no reformation unless there is a preliminary agreement, a prior contract, either written or verbal, by which to make the rectification. The minds of the parties must have met in a contract, for if they did not, there is no contract and hence none to be rectified. There must have been an agreement, a common assent to the same thing, a valid agreement sufficiently expressing the real intent of the parties, which the written instrument, when reformed, will express. If no contract was ever made concerning the matter about which a mistake is claimed there can be no reformation. Inasmuch as the written instrument must fail to express the agreement the parties actually made, the contract established must differ from the instrument to be reformed. Thus the terms of the real agreement, the exact contract which the parties agreed upon, but failed through mistake to put into writing, must be shown." See also 76 C.J.S. Reformation of Instruments § 18, pages 342, 343.

In accordance with plaintiff's request, judgment in the sum of $3000.00 is hereby rendered against American Motorists Insurance Company, principal, and the Lumbermens Mutual Casualty Company, surety, on their supersedeas bond filed herein together with interest at 6% from the date judgment was entered below and the costs of this action; such judgment to be enforced by the trial court as if therein rendered.

Affirmed.

BLACKBIRD, C. J., and DAVISON, JACKSON, IRWIN and BERRY, JJ., concur.

HALLEY, J., dissents.