**Ralph F. DODSON, d/b/a, Dodson Construction Company, Appellee,**

v.

**ST. PAUL INSURANCE COMPANY, Appellant.**

No. 68832.

Supreme Court of Oklahoma.

March 5, 1991.

Rehearing Denied July 2, 1991.

Roberts, Burns & Delashaw, Inc., Darryl F. Roberts, Ardmore, for appellee.

Deaton & Davison, Inc., Austin R. Deaton, Jr., Ada, for appellant.

DOOLIN, Justice.

Appellant, St. Paul Insurance Company, (Insurer), appeals from summary judgment of liability under a Comprehensive General Liability Insurance Coverage Form–Board Policy (CGLI), issued to appellee Dodson Construction Company, and the resultant jury award of actual and punitive damages. The district court also ordered Insurer to pay Dodson's attorneys fees and cost of this action. We reverse.

Dodson Construction, a general building contractor, constructed a school building for the Board of Education of Independent School District No. 1 in Sulphur, Oklahoma. Upon completion of the building, the Board of Education discovered the roof of the school was poorly constructed, causing leaks and interior damage to the school building. The roofing subcontractor, employed by Dodson, had used defective and/or nonspecified materials, improperly installed the roof, and upon demand was unable to repair or replace the roof. Dodson forwarded a loss notice to insurer concerning the leaky roof. Insurer denied coverage for the subcontractor's defective workmanship and the materials used to construct the roof.

The school district instituted action against Dodson and Mid–Continent Casualty Company, as surety on the performance bond. Dodson's attorney and the School District agreed to submit the case to arbitration before the American Arbitration Association. The Construction Industry Arbitration Tribunal granted judgment against Dodson for the sum of $44,997.00, representing the cost to replace the roof, and $1,000.00 for interior damage caused by the leaky roof. Dodson did not request Insurer to defend against, or even notify Insurer of the school board's action.

Dodson then instituted this action against Insurer for failure to defend and the insurer's alleged bad faith refusal to comply with the terms of the CGLI policy. Insurer subsequently admitted liability for the school building's interior property damage caused by the roofing defect, but insisted that the policy did not cover the subcontractor's defective workmanship or materials. Firm in its belief, insurer requested the district court to determine, as a matter of law, that the CGLI policy provided no coverage for the roofing subcontractor's defective material and faulty workmanship.

The CGLI policy, submitted to the district court, is a standardized contractual form developed, revised and generally used in the insurance industry. Dodson paid

liability coverage premiums for bodily injury and property damage in two broad areas: Contractors' Liability Insurance Coverage and Products and Completed Operations Liability Coverage. The insurance contract in question has two interrelated provisions; first, the general declaration of coverage, followed by the second part, the exclusions. The pertinent language of the standardized contract provides:

> The Company will pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as damages because of:
>
> Coverage A. **bodily injury** or
>
> Coverage B. **property damage**
>
> to which this insurance applies, caused by an **occurrence,** and the Company shall have the right and duty to defend any suit against the **Insured** seeking damages on account of such **bodily injury** or **property damage,** ....
>
> **Exclusions**
>
> This insurance does not apply:
>
> (a) to liability assumed by the **Insured** under contract or agreement except an incidental **contract**; but this exclusion does not apply to a warranty of fitness or quality of the **Named Insured's products** or warranty that work performed by or on behalf of the **Named Insured** will be done in a workmanlike manner;
>
> \* \* \* \* \* \*
>
> (m) to **property damage** to the **Named Insured's products** arising out of such products or any part of such products;

(n) to **property damage** to work performed by or on behalf of the **Named Insured** arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith; .... [Emphasis in original].

The district court, overruling insurer's motion for summary judgment, held that Dodson's CGLI policy did cover the loss resulting from the roofing subcontractor's faulty craftmanship. The trial court's decision also implicitly imposed a prior duty upon insurer to provide Dodson with a defense against the school board's previous arbitration action. Subsequently, the jury returned verdicts for $62,749.00 in actual damages and $100,000.00 in punitive damages against insurer. Thereafter, the district court awarded Dodson attorneys fees and cost of $56,000.00. Insurer appeals.

We have not previously addressed the question of whether a CGLI policy's exclusions preclude recovery for property damage to either the insured's completed work product or to work performed by or on behalf of the insured. In reaching its decision in this case of first impression, the district court specifically recognized a split of authority concerning the mutual relationship between exclusion (a) with policy exclusions (m) and (n). The majority view, as expressed in *Weedo v. Stone–E–Brick, Inc.,*[1] holds that exclusions (a), (m), and (n) are clear, unambiguous, and effectively

1. 81 N.J. 233, 405 A.2d 788, 794 (1979). See also, *Hartford Accident & Indem. Co. v. Pacific Mutual Life Ins. Co.,* 861 F.2d 250, 253 (10th Cir.1988); *Fireguard Sprinkler Sys., Inc. v. Scottsdale Ins. Co.,* 864 F.2d 648, 654 (9th Cir. 1988) (Applying Oregon law.); *Gulf Mississippi Marine Corp. v. George Engine Co.,* 697 F.2d 668, 673 (5th Cir.1981); *Biebel Bros., Inc. v. United States Fidelity & Guar. Co.,* 522 F.2d 1207, 1210 (8th Cir.1975); *Home Indem. Co. v. Miller,* 399 F.2d 78, 82 (9th Cir.1968); *Smith v. Hood Enter., Inc.,* 700 F.Supp. 301, 303 (M.D.La.1988) (Applying Louisiana law.); *Allianz Ins. Co. v. Impero,* 654 F.Supp. 16, 18 (E.D.Wash.1986); *Taylor–Morley–Simon, Inc. v. Michigan Mut. Ins. Co.,* 645 F.Supp. 596, 600 (E.D.Mo.1986), *aff'd,* 822 F.2d 1093 (1987); *Reliance Ins. Co. v. Mogavero,* 640 F.Supp. 84, 87 (D.Maryland 1986); *Engineered Prod., Inc. v. Aetna Casualty & Surety Co.,* 295 S.C. 375, 368 S.E.2d 674, 675 (1988); *Taylor–McDonnell Constr. Co. v. Commercial Union Ins. Co.,* 229 Mont. 34, 744 P.2d 892, 895 (1987); *Lusalon, Inc. v. Hartford Accident & Indem. Co.,* 400 Mass 767, 511 N.E.2d 595, 597 (1987); *Ricci v. New Hampshire Ins. Co.,* 721 P.2d 1081, 1085–86 (Wyoming 1986); *Gene & Harvey Builders, Inc. v. Pennsylvania Mfg. Assoc, Inc. Co.,* 512 Pa. 420, 517 A.2d 910, 914 (1986); *Knutson Constr. Co. v. St. Paul Fire & Marine Ins.,* 396 N.W.2d 229, 234–35 (Minn.1986); *Berry v. South Carolina Ins. Co.,* 495 So.2d 511, 512–13 (Ala.1985); *Western Casualty & Surety Co. v. Brochu,* 105 Ill.2d 486, 86 Ill.Dec. 493, 499, 475 N.E.2d 872, 878 (1985) [But see, *Marathon Plastics, Inc. v. International Insurance Co.,* 161 Ill. App.3d 452, 112 Ill.Dec. 816, 821–22, 514 N.E.2d 479, 484–85 (1987), *cert. den.,* 119 Ill.2d 559, 119 Ill.Dec. 387, 522 N.E.2d 1246 (1988) ]; *Bulen v. West Bend Mut. Ins. Co.,* 125 Wis.2d 259, 371 N.W.2d 392, 393 (1985); *Sturla, Inc. v. Fireman's Fund Ins. Co.,* 67 Haw. 203, 684 P.2d 960, 964 (1984); *Helfeldt v. Robinson,* 290 S.E.2d 896,

deny coverage for the "business risk"[2] at issue. The minority view, as stated in *Fresard v. Michigan Millers Mut. Ins. Co.,*[3] holds that exclusion (a) is ambiguous when read in conjunction with exclusions (m) and (n), and such courts construe exclusion (a) most favorably to the insured as providing business risk coverage.

In the instant case our district court opined that "an ambiguity exists as between exclusion (a) and exclusions (m) and (n)." In so holding, the district court, (1) emphasized the reasonable expections of the "average policyholder," (2) recognized that exclusions are read with the general declaration of coverage and independently of every other exclusions, and (3) specifically admitted "an exclusion cannot confer coverage, but only limit it." Relying on *Fresard,* the district court seems to have reasoned that because the exception to exclusion (a) exempts coverage for the occur-

rence sustained by Dodson, exclusions (m) and (n) cannot defeat the reasonable construction and expection of coverage for damage to the insured's work product, because then the exception provision of exclusion (a) would be a nullity. The district court concluded that "the only purpose served by the exception to exclusion (a) is to mislead an average policyholder to believing that he/she would have coverage for damage to his/her work product or for damage resulting from a breach of the warranties prescribed in the exception." In other words, the district court held that the exception to exclusion (a) provides coverage to the insured for claims based on products liability, and on the contractor's, or in the instant case, subcontractor's breach of warranty that work performed will be done in a workmanlike manner.

 As noted at the outset, this Court has not previously construed exclusion (a)

901 (W.Va.1981); *Nationwide Mutual Ins. Co. v. Wenger,* 222 Va. 263, 278 S.E.2d 874, 876 (1981); *LaMarche v. Shelby Mut. Ins. Co.,* 390 So.2d 325, 326 (Fla.1980); *United States Fire Ins. Co. v. Colver,* 600 P.2d 1, 4 (Alaska 1979); *Vernon Williams & Son Constr., Inc. v. Continental Ins. Co.,* 591 S.W.2d 760, 765 (Tenn.1979); *Overson v. U.S. F. & G. Co.,* 587 P.2d 149, 151 (Utah 1978); *B.A. Green Constr. Co. v. Liberty Mut. Ins. Co.,* 213 Kan. 393, 517 P.2d 563, 567 (1973); *Haugan v. Homes Indem. Co.,* 86 S.D. 406, 197 N.W.2d 18, 22 (1972); *Hartford Accident & Indemnity Co. v. Olson Bros., Inc.,* 187 Neb. 179, 188 N.W.2d 699, 703 (1971); *United States Fidelity & Guar. Corp. v. Advance Roofing & Supply Co.,* 163 Ariz. 476, 788 P.2d 1227, 1233–34 (Ariz. Ct.Ap.1989); *Federated Serv. Ins. So. v. R.E.W., Inc.,* 53 Wash.App. 730, 770 P.2d 654, 657–58 (1989); *Savannah Laundry & Mach. Co. v. Home Ins. Co.,* 189 Ga.App. 420, 376 S.E.2d 373, 374–75 (1988); *Western World Ins. Co. v. Carrington,* 90 N.C.App. 520, 369 S.E.2d 128, 130 (1988); *American Family Mutual Ins. Co. v. Ragsdale Concrete Finishing, Inc.,* 725 S.W.2d 623, 625 (Mo.App.1987); *Vari Builders, Inc. v. U.S. Fidelity & Guar. Co.,* 523 A.2d 549, 552 (Del.Supr.Ct.1986); *Lusalon, Inc. v. Hartford Accident & Indem. Co.,* 23 Mass.Ap.Ct. 903, 498 N.E.2d 1373–74 (1986); *Century I Joint Venture v. U.S.F. & G.,* 63 Md.App. 545, 493 A.2d 370, 377 (1985); *Zandri Constr. Co. v. Firemen's Ins. Co.,* 81 A.D.2d 106, 440 N.Y.S.2d 353, order affirmed 54 N.Y.2d 999, 446 N.Y.S.2d 45, 430 N.E.2d 922 (1981); *Travelers Ins. Co. v. Volentine,* 578 S.W.2d 501, 504 (Tex.Civ.App.1979); *St. Paul Fire & Marine Ins. Co. v. Coss,* 80 Cal.App.3d 888, 145 Cal.Rptr. 836, 841 (1978).

**2.** Two types of risk are assumed by a general contractor, such as Dodson Construction in the instant case. First is the "business risk," that is the contractor guarantees that his construction materials and services will be performed in a reasonable workmanlike manner, and if not, the contractor will repair, or withdraw and replace all defective or faulty materials and work. The second type of risk, not presented in this case, are those causing bodily injury to people or damage to property other than the contractor's work or final product itself. See *Weedo v. Stone–E–Brick, Inc.,* 81 N.J. at 239–41, 405 A.2d at 791–92.

**3.** 97 Mich.App. 584, 296 N.W.2d 112, 115 (1980), *aff'd,* 414 Mich. 686, 327 N.W.2d 286 (1982). See also, *Baybutt Constr. Corp. v. Commercial Union Ins. Co.,* 455 A.2d 914, 921 (Me.1983); *Aid Ins. Servs., Inc. v. Geiger,* 294 N.W.2d 411, 414 (N.D.1980); *Commercial Union Assurance Cos. v. Gollan,* 118 N.H. 744, 394 A.2d 839, 842 (1978); *Federal Ins. Co. v. P.A.T. Homes, Inc.,* 113 Ariz. 136, 547 P.2d 1050, 1053 (1976); *Worsham Constr. Co. v. Reliance Ins. Co.,* 687 P.2d 988, 991 (Colo.App.1984); *McRaven v. F–Stop Photo Labs, Inc.,* 660 S.W.2d 459, 462 (Mo.Ap.Ct. 1983). Although Illinois is listed in the majority of jurisdictions, see *Western Casualty & Surety Co. v. Brochu,* note 1, supra, there is some indication that the Illinois courts may be shifting to the minority position. See, *United States Fidelity & Guar. Co. v. Wilkin Insulation Co.,* 193 Ill.App.3d 1087, 140 Ill.Dec. 907, 613–14, 550 N.E.2d 1032, 1038–39 (1989), *cert. den.,* 132 Ill.2d 555, 144 Ill.Dec. 267, 555 N.E.2d 386 (1990).

alone, or together with exclusions (m) and (n). The district court recognized established rules of Oklahoma jurisprudence in adopting the underlying premise of the minority position. Nevertheless, the court's interpretation, under the guise of strict construction against the insurer, (1) finds liability coverage where none otherwise existed, (2) ignores the reasonable effect of two contractual provisions, and (3) rewrites the parties' contract to fasten a liability upon the insurer that was not originally contemplated by the parties. We cannot agree with a construction which isolates and stretches one contractual provision, creating an ambiguity, and then entirely neutralizes two provisions, instead of giving effect to every part of the contract, if possible, as our law requires. See n. 11 infra.

Our examination of the law in the State of Oklahoma indicates an analogous course following the majority position that the CGLI policy provisions are without ambiguity or uncertainty, and are enforceable as issued by the insurer; notwithstanding the "reasonable expectations of the average policyholder." The contractual provision relied upon by the district court as creating an ambiguity is at best a strained and unnatural construction we do not deem permissible. Because an insurance policy is a contract, we think it proper to reiterate some rules governing the interpretation of contracts, since the same principles generally apply to the construction of a policy of insurance.[4]

■ An insurance policy, like any other contract of adhesion, is liberally construed, consistent with the object sought to be accomplished, so as to give a reasonable effect to all of its provisions, if possible.[5] In *Wiley v. Travelers Ins. Co.*, 534 P.2d 1293, 1295 (Okla.1974), we observed that:

> Parties to insurance contract are at liberty to contract for insurance to cover such risks as they see fit and are bound by the terms of contract and courts will not undertake to rewrite terms thereof. The construction of an insurance policy should be a natural and reasonable one, fairly constructed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result.

■ The terms of the parties' contract, if unambiguous, clear, and consistent, are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intention of the parties as it existed at the time the contract was negotiated.[6] The interpretation of an insurance contract and whether it is ambiguous is a matter of law for the Court to determine and resolve accordingly.[7] However, neither forced nor strained construction will be indulged, nor will any provision be taken out of context and narrowly focused upon to create and then construe an ambiguity so as to import a favorable consideration to either party than that expressed in the contract.[8] If the

---

4. *Fidelity & Casualty Co. of New York v. Curtis Brown Co.*, 105 Okla. 136, 232 P. 99 (1924); *National Aid Life Ass'n v. May*, 201 Okla. 450, 207 P.2d 292 (1949); *National Life & Acc. Ins. Co. v. Cudjo*, 304 P.2d 322 (1957).

5. *Short v. Okla. Farmers Union Ins. Co.*, 619 P.2d 588, 589 (Okla.1980); *Lester v. Sparks*, 583 P.2d 1097 (Okla.1978); *National Life and Accident Ins. Co. v. Cudjo*, 304 P.2d 322 (1957); *County Fire Ins. Co. of Philadelphia v. Harper*, 207 Okla. 359, 249 P.2d 705, 707 (1952); *Friend v. Southern States Life Ins. Co.*, 80 Okla. 76, 194 P. 204 (1920).

6. 15 O.S. 1981 § 160. See also, *Prowant v. Sealy*, 77 Okla. 244, 187 P. 235, 239 (1919); *Continental Casualty Co. v. Goodnature*, 170 Okla. 477, 41 P.2d 77 (1935); *Great American Ins. Co. of New York v. O.K. Packing Co.*, 211 P.2d 1014, 1016 (Okla.1949); *Great Northern Life Ins. Co. v.*

*Cole*, 248 P.2d 608, 610 (Okla.1952); *Penley v. Gulf Ins. Co.*, 414 P.2d 305 (Okla.1966).

7. 15 O.S. 1981 § 152. See also, *Harjo Gravel Co. v. Luke–Dick Co.*, 194 Okla. 537, 153 P.2d 112 (1944); *National Insurance Underwriters v. Walker*, 206 Okla. 629, 245 P.2d 737 (1952); *Panhandle Cooperative Royalty Co. v. Cunningham*, 495 P.2d 108 (Okla.1971); *Corbett v. Combined Communications Corp. of Okla., Inc.*, 654 P.2d 616 (Okla.1982); *State, ex rel., Commissioners of the Land Office v. Bulter*, 753 P.2d 1334, 1336 (Okla.1988).

8. *Mid–Continent Life Ins. Co. v. Skye*, 113 Okla. 184, 240 P. 630 (1925); *Sovereign Camp, W.O.W. v. Howell*, 176 Okla. 451, 56 P.2d 138 (1936); *Cities Service Oil Co. v. Geolograph Co.*, 208 Okla. 179, 254 P.2d 775 (1953); *American Iron & Mach. Works Co. v. Ins. Co. of North America,*

insurance policy language is doubtful and susceptible to two constructions, without resort to and following application of the rules of construction, then a *genuine ambiguity* exists, and the contract will be interpreted, consistent with the parties' intentions, most favorably to the insured and against the insurance carrier.[9]

 The general declaration of insurance coverage, as established by the insurance policy and limited by its provisions, normally determines the insurance carrier's liability, and the insured's respective rights under the contract by identifying what risks are covered and excluded by the policy.[10] The policy exclusions are read seriatim; each exclusion eliminates coverage and operates independently against the general declaration of insurance coverage and all prior exclusions by specifying other occurrences not covered by the policy.[11] Thus, subsequent exclusions can further limit or even remove a covered risk from the general declaration of insurance coverage.[12] In case of doubt, exclusions exempt-

ing certain specified risks are construed strictly against the insurer.[13]

Mindful of the rules of construction, we hold that the CGLI policy was not intended to cover Dodson's cost for repairing and replacing the roofing subcontractor's defective workmanship and faulty products.[14] We find no ambiguity created by exclusion (a) alone, or when read with regard to exclusions (m) and (n). First, exclusion (a) removes from coverage any cause of action grounded upon a liability arising "under contract or agreement except an incidental contract." Second, following the contractual liability provision is the exception to exclusion (a): "but this exclusion does not apply to a warranty of fitness or quality of the Named Insured's products or warranty that work performed by or on behalf of the Named Insured will be done in a workmanlike manner." This exception *reserves* coverage for claims sounding in a breach of implied warranties of fitness, quality or craftsmanship.

 Although it may reserve coverage, the exception to exclusion (a) does not cre-

375 P.2d 873 (Okla.1962); *Mercury Inv. Co. v. F.W. Woolworth Co.,* 706 P.2d 523, 529 (Okla. 1985). See generally, 44 C.J.S. Insurance § 297(c)(2) (1945).

9. *Capital Fire Ins. Co. v. Carroll,* 26 Okla. 286, 109 P. 535 (1910); *Bankers' Reserve Life Co. v. Rice,* 99 Okla. 184, 226 P. 324 (1924); *Metropolitan Life Ins. Co. v. Lillard,* 118 Okla. 196, 248 P. 841 (1926); *New York Life Ins. Co. v. Sullivan,* 191 Okla. 236, 129 P.2d 71 (1942).

10. *Illinois Bankers Life Assurance Co. v. Tennison,* 202 Okla. 347, 213 P.2d 848 (1950); *United States Fidelity and Guaranty Co. v. Walker,* 329 P.2d 852, 854 (Okla.1958).

11. Title 15 O.S. 1981 § 157 provides: "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." See *Fidelity & Casualty Co. of New York v. Gray,* 181 Okla. 12, 72 P.2d 341 (1937); *Benefit Ass'n of Ry. Employees v. Mitchell,* 129 Okla. 114, 263 P. 652 (1928). See also, *Modern Sounds & Systems, Inc. v. Federated Mut. Ins. Co.,* 200 Neb. 46, 262 N.W.2d 183, 186 (1978) (In an insurance policy an exclusion is a provision which eliminates coverage where, were it not for the exclusion, coverage would have existed.)

12. *C.P.A. Co. v. Jones,* 263 P.2d 731 (Okla.1954); *Wiley v. Travelers Ins. Co.,* 534 P.2d 1293 (Okla.

1974); *Shepard v. Farmers Ins. Co., Inc.,* 678 P.2d 250 (Okla.1983).

13. *Aetna Insurance Co. v. Zoblotsky,* 481 P.2d 761 (Okla.1971); *Continental Casualty Co. v. Beaty,* 455 P.2d 684 (Okla.1969); *American Motorist Ins. Co. v. Biggs,* 380 P.2d 950 (Okla.1963).

14. "The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained." Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know,* 50 Neb.L.Rev. 415, 441 (1971).

ate, grant, or carve out perpetual all-risk liability coverage for any and all cause of actions stemming from a breach of the warranties so prescribed therein. Indeed, when considering the whole of the contract, which we must do for the purpose of this appeal, the general declaration of insurance created broad liability coverage, and by its own terms, subsequent exclusions in the policy, such as (m) and (n), can identify what other risks are further limited, or excluded and not cognizable as a covered claim "to which this insurance applies."

Regardless of the underlying cause of action against the insured, exclusions (m) and (n) eliminate coverage for property damage caused by the lack of quality or performance of the insured's products and for any repair or replacement of the faulty work performed by or on behalf of the insured. Exclusions (m) and (n) unquestionably exclude coverage for the business risk incurred by the insured. As observed by the Supreme Court of Indiana in *Indiana Insurance Company v. DeZutti*, 408 N.E.2d 1275, 1279, note 1 (Ind.1980):

> What is covered by the policy is defective workmanship which causes personal injury or property damage not excluded under some provision of the policy. So if the insured's breach of an implied warranty results in damage to property *other* than the insured's work or product which is excluded by exceptions (n) and (*o*), the policy would provide coverage. To hold otherwise would effectively convert the policy into a performance bond or guarantee of contractual performance and result in coverage for the repair and replacement of the insured's own faulty workmanship. This was not the intent and understanding of the parties at the time the policy was purchased.

We think that an analysis which results in overreaching the exception to exclusion (a) and allowing the exception to make irrelevant and defeat the operation of other subsequent and explicit exclusions would be absurd. Even if the exception to exclusion (a) is ambiguous, as the district court held, the ambiguity is not genuine. Moreover, even if a genuine ambiguity arises from the language of the policy, "it would

be our duty to give it that construction which would make it fair and such as prudent man would naturally execute in preference to one that would make it inequitable or such as reasonable men would not be likely to enter into." *Withington v. Gypsy Oil Co.*, 68 Okla. 138, 172 P. 634, 637 (1918). Consequently, we decline to rewrite the GCLI policy and transform the contract into a performance bond, or provide coverage for products liability or construction malpractice insurance, where none was originally intended by the parties to the policy.

The judgment in favor of Dodson is REVERSED.

HODGES, V.C.J., and LAVENDER, KAUGER and SUMMERS, JJ., concur.

WILSON, J., concurs in result.

OPALA, C.J., concurs in part, dissents in part.

SIMMS and HARGRAVE, JJ., dissent.