OKLAHOMA ATTORNEYS MUTUAL INSURANCE CO. v. COX



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:OKLAHOMA ATTORNEYS MUTUAL INSURANCE CO. v. COX

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 OKLAHOMA ATTORNEYS MUTUAL INSURANCE CO. v. COX
2019 OK CIV APP 25
Case Number: 117480
Decided: 04/05/2019
Mandate Issued: 05/01/2019
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2019 OK CIV APP 25, __ P.3d __

 


OKLAHOMA ATTORNEYS MUTUAL INSURANCE COMPANY, Plaintiff/Appellee,
v.
DAVID A. COX, Defendant/Appellant,

CHRISTOPHER MANSFIELD; GAYLE BOYLE; SHARON C. HART; KATHRYN R. STEWART; JIM McGOUGH; CATHERINE WELSH, Defendants.
APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA
HONORABLE REBECCA NIGHTINGALE, JUDGE
AFFIRMED
Andrew C. Jayne, Emily C. Krukowski, BAUM GLASS JAYNE & CARWILE, Tulsa, Oklahoma, for Plaintiff/Appellee,
Ronald E. Durbin, John E. Rooney, Jr., DURBIN LAW FIRM, PLLC, Tulsa, Oklahoma, for Defendant/Appellant David Cox, 
Sean P. Downes, DOWNS LAW OFFICE, Sapulpa, Oklahoma, for Defendant Christopher Mansfield,
Johnny P. Akers, Frederick S. Esser, LAW CENTER OF AKERS & ESSER, PLLC, Bartlesville, Oklahoma, for Defendants Gayle Boyle, Sharon C. Hart, and Kathryn R. Stewart,
Stephen L. Andrews, Renee Williams, ANDREW & Williams, P.C., Tulsa, Oklahoma, for Defendants Jim McGough and Catherine Welsh.
Kenneth L. Buettner, Judge:
¶1 This appeal arises from a declaratory action by Plaintiff/Appellee Oklahoma Attorneys Mutual Insurance Company (Insurer) against a former attorney, Defendant Christopher Mansfield (Mansfield), and some of his former clients (collectively "Defendants"), including Defendant/Appellant David A. Cox (Cox). Insurer sought a declaratory judgment stating it was not obligated to defend or cover Mansfield in certain civil suits brought by Cox and other Defendants because Mansfield's conduct giving rise to Defendants' claims was excluded from coverage under the "crime/fraud exclusion" in the policy. Insurer moved for summary judgment. Finding no factual dispute, the trial court granted Insurer's motion. Cox appeals. Because Mansfield's conduct giving rise to Defendants' claims was excluded under the terms of the policy, we hold that Insurer was entitled to judgment as a matter of law and affirm.
¶2 Mansfield was previously licensed as an attorney in the state of Oklahoma. As such, Mansfield regularly received court appointments in probate, adoption, and guardianship matters. In 2009, a court appointed Mansfield as Special Administrator of the estate of Elizabeth S. Cox (the Cox Estate), to which Cox was an heir. In 2010, the same court appointed Mansfield as Personal Representative of the Cox Estate. On January 16, 2014, the Oklahoma Bar Association filed a complaint against Mansfield, alleging misconduct by Mansfield with regard to his management of the Cox Estate. Adopting the recommendation of the Professional Responsibility Tribunal, the Supreme Court of Oklahoma found that Mansfield violated the Oklahoma Rules of Professional Conduct by diverting funds from the Cox Estate without authorization. The Oklahoma Supreme Court suspended Mansfield from the practice of law for eighteen (18) months starting April 13, 2015.
¶3 After the suspension of his law license for his mismanagement of the Cox Estate, Mansfield was accused of similar misconduct regarding other estates.[1] Mansfield entered into agreed judgments in at least five disputes regarding these other estates, totaling in excess of $1 million in judgments against him. The Supreme Court accepted Mansfield's resignation from the Oklahoma Bar January 1, 2016.
¶4 In addition to the professional misconduct proceedings, the United States brought criminal charges against Mansfield for his conduct in managing one of the estates, alleging bank fraud and unlawful monetary transaction. United States v. Mansfield, No. 4:16-CR-00114-1-GKF (N.D. Okla. March 16, 2017). In response to the charges, Mansfield pleaded guilty and agreed to a forty-one-month prison sentence. Mansfield also agreed to pay approximately $400,000 in restitution to the victim estate, as well as another $131,000 in restitution to other allegedly victimized estates--including the Cox Estate. A criminal judgment was entered against Mansfield March 16, 2017.
¶5 Cox filed suit against Mansfield September 12, 2014, alleging negligence, gross negligence, breach of duty by personal representative, deceit/fraud, unjust enrichment, and seeking punitive damages. Cox v. Mansfield, No. CJ-2014-3523 (Tulsa Cty. Dist. Ct. filed Sept. 12, 2014) [hereinafter the Cox suit]. The Cox suit is ongoing. The other Defendants filed suit against Mansfield August 4, 2017, alleging breach of fiduciary duty/legal malpractice and negligence, and claiming respondeat superior on the part of Mansfield's employer. McGough v. Mansfield, Case, No. CJ-2017-3072 (Tulsa Cty. Dist. Ct., default judgment granted November 13, 2018) [hereinafter the McGough suit]. The trial court granted default judgment against Mansfield in the McGough suit November 13, 2018.[2]
¶6 Prior to the allegations of misconduct Mansfield had purchased a "Lawyers Professional Liability Claims-Made Policy" from Insurer for the period of July 13, 2013 to July 13, 2014 (Policy 1). Policy 1 was canceled when Mansfield's law license was suspended. Mansfield then purchased a "Three Year Extended Reporting Endorsement" beginning June 1, 2015 (Policy 2). Insurer was notified of the Cox suit during Policy 1, and of the McGough suit during Policy 2 (hereinafter referenced jointly as "the Policies").
¶7 Insurer filed this action September 18, 2017, seeking a declaratory judgment that it has no duty to defend or cover Mansfield in the Cox or McGough suits. Insurer moved for summary judgment February 5, 2018, alleging there was no dispute as to material fact and it was entitled to judgment as a matter of law. Insurer asserted that Mansfield's conduct giving rise to the Cox and McGough suits was excluded from coverage under the "crime/fraud exclusion" in the Policies. Insurer also obtained a stay of discovery while the motion for summary judgment was pending. After a hearing, the trial court granted summary judgment in favor of Insurer July 11, 2018, and issued an order September 24, 2018. Cox appeals.
¶8 The sole question on appeal is whether the trial court erred by granting summary judgment and holding that Insurer was entitled to judgment as a matter of law because Cox's claims were excluded from coverage under the crime/fraud exclusion in the Policies. Summary judgment will be affirmed only where there is no dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Lowery v. Echostar Satellite Corp., 2007 OK 38, ¶ 11, 160 P.3d 959. The interpretation of an insurance policy, with its exclusions, is a question of law. Wiley v. Travelers Ins. Co, 1974 OK 147, ¶ 15, 534 P.2d 1293. Questions of law are reviewed de novo, "which affords this Court with plenary, independent, and non-deferential authority to examine the issues presented." Sheffer v. Carolina Forge Co., 2013 OK 48, ¶ 10, 306 P.3d 544.
¶9 In Oklahoma, the guiding principle in an insurance coverage dispute is that "an insurance policy is a contract." Duensing v. State Farm Fire & Cas. Co., 2006 OK CIV APP 15, ¶ 18 131 P.3d 127. Accordingly, the parties to the contract may agree to such terms as they see fit and this Court is not at liberty to rewrite those terms. Id. The terms of an insurance policy should be construed according to their plain meaning, so long as the language is not ambiguous and the construction does not bring about an absurd result. Wiley, 1974 OK 147, ¶ 16, 534 P.2d 1293. Insurance contracts should be liberally construed "in favor of the object to be accomplished." Am. Motorists Ins. Co., v. Biggs, 1963 OK 87, ¶ 18, 380 P.2d 950 (citing 44 C.J.S. Insurance § 297c(1) (1945)). If the provisions of a policy can be construed two ways, the court should construe the terms against the insurer and in favor of the insured. Id.
¶10 An insurer may limit its own risk via the terms of the policy. Wiley, 1974 OK 147, ¶ 16, 534 P.2d 1293 (citing C.P.A. Co. v. Jones, 1953 OK 345, ¶ 23, 263 P.2d 731). The general declaration of coverage usually determines the insurer's liability and rights. Dodson v. St. Paul Ins. Co., 1991 OK 24, ¶ 13, 812 P.2d 372. An "exclusion" is a policy term eliminating coverage where it otherwise would have existed under the general declaration. Id. ¶ 13 n. 11. "[P]olicy exclusions are read seriatim; each exclusion eliminates coverage and operates independently against the general declaration of insurance coverage and all prior exclusions by specifying other occurrences not covered by the policy. . . In case of doubt, exclusions exempting certain specified risks are construed strictly against the insurer." Id.
¶11 Cox asserted six claims in the Cox suit: (1) negligence, (2) gross negligence, (3) breach of duty by personal representative, (4) deceit/fraud, (5) unjust enrichment, and (6) punitive damages. Cox conceded two of his claims are excluded from coverage--deceit/fraud and punitive damages. This appeal therefore concerns only the four remaining claims.
¶12 Per the "Insuring Agreement" between Insurer and Mansfield, Insurer agreed to pay "money damages" owed as a result of:
any claim or claims first made against [Mansfield] reported to [Insurer] . . . relating to the quality of legal services provided, arising out of any act or omission of [Mansfield] in rendering or failing to render, professional services for others in [Mansfield's] capacity as a lawyer, and caused by [Mansfield] or any other person whose acts or omissions [Mansfield] is legally responsible, except as excluded or limited by the terms, conditions and exclusions to this policy. The term "money damages" shall not be construed to mean the return, restitution, or disgorgement of fees paid to, claimed, or retained by [Mansfield.]
[3]
Insurer also agreed to "defend any suit against [Mansfield] alleging such act or omission and seeking damages which are payable under the terms of [the Policies]."
¶13 Insurer argues the claims in the Cox suit are excluded from coverage because Mansfield's conduct giving rise to the claims falls under the crime/fraud exclusion. This exclusion states that the Policies do not apply "to any claim arising out of any dishonest, fraudulent, criminal, malicious or knowingly wrongful act or omission or deliberate misrepresentation committed by, at the direction of, or with the knowledge of [Mansfield]." Insurer maintains that Cox's claims for negligence, gross negligence, unjust enrichment, and breach of duty "arise out of" Cox's fraudulent and/or criminal conduct.
¶14 Here, the language of the crime/fraud exclusion is not ambiguous on its face. The parties do not dispute the meaning of the words "dishonest, fraudulent, criminal, malicious or knowingly wrongful" and agree that all such conduct should be excluded from coverage. Instead, the parties disagree on whether Mansfield engaged in separate, non-fraudulent/non-criminal behavior that gives rise to additional liability.
¶15 At summary judgment, the moving party has the burden to establish that no dispute as to a material fact exists. Reeds v. Walker, 2006 OK 43, ¶ 9, 157 P.2d 100. The non-moving party does not share the same burden, but instead must merely show that, at least by the date of trial, it will be able to present some evidence of its claims. Schovanec v. Archdiocese of Okla. City, 2008 OK 70, ¶ 48, 188 P.3d 158 (citing Copeland v. Lodge Enter., Inc., 2000 OK 36, ¶ 9, 4 P.3d 695).
¶16 Insurer attached thirty-one (31) documents to its motion for summary judgment, including: the Oklahoma Supreme Court ruling suspending Mansfield's law license, the United States' response to Mansfield's Motion for Variance in his criminal proceeding, Mansfield's plea agreement in his criminal proceeding, the judgment in Mansfield's criminal case, and Cox's petition in the Cox suit.
¶17 In order to withstand summary judgment, Cox needed to present evidence indicating he sustained damages from Mansfield's negligent conduct which are separate from those sustained as a result of Mansfield's fraudulent and/or criminal conduct. In response to Insurer's motion for summary judgment, Cox attached only three documents in support: the Supreme Court ruling suspending Mansfield's license, Cox's own petition in the Cox suit, and the docket sheet for Mansfield's criminal proceedings. Cox also later submitted his own affidavit.
¶18 The evidence presented at summary judgment failed to demonstrate that Cox suffered an injury from Mansfield's conduct that was separate from that which has been deemed fraudulent or criminal by the suspension of Mansfield's law license and his criminal conviction. In his petition in the Cox suit, Cox alleges that Mansfield negligently mismanaged the Cox Estate, breached his duty as personal representative by failing to act in the best interest of the Estate, and was unjustly enriched in his role as personal representative. Without providing additional sworn statements or evidentiary materials delineating these harms from those addressed in Mansfield's professional suspension and criminal proceedings, the claims in the Cox suit appear to derive from Mansfield's criminal and fraudulent/knowingly wrongful conduct.
¶19 In response to Insurer's motion for summary judgment, Cox argued (1) that the Supreme Court never concluded that Mansfield "misappropriated" funds from the Cox Estate, and (2) that Mansfield was never found to have "embezzled" money from the Cox Estate. Though these statements may be true, they are not conclusive in establishing that Cox's claims are covered by the Policies.
¶20 It is true that the Supreme Court did not find that Mansfield "misappropriated" funds from the Cox Estate, but the court did find that Cox had "commingled" and "converted" funds from the estate. State ex rel. Okla. Bar Ass'n v. Mansfield, 2015 OK 22, ¶¶ 9-30, 350 P.3d 108. The Supreme Court made this determination because Cox's transfer of funds would have likely ultimately been approved by the probate court--though he failed to seek permission beforehand--and because there was no indication that Mansfield had "sought to intentionally inflict grave economic harm upon the Cox Estate." Id. ¶ 30. The Supreme Court found that Mansfield's conduct with regard to the Cox Estate fell short of "purposely depriv[ing] a client through deceit and fraud," but still found that Mansfield was culpable and deserving of discipline. Id. ¶¶ 18, 49 (quoting State ex rel. Okla. Bar Ass'n v. Combs, 2007 OK 65, ¶ 15, 175 P.3d 340).
¶21 Further, though Mansfield's criminal conviction was primarily based upon his actions regarding another estate, his diversion of funds from the Cox Estate contributed to both his plea and sentencing. As stated in Mansfield's plea agreement, the criminal court was "not limited to the amounts alleged in the count(s) to which the defendant is pleading guilty" in determining restitution to be paid, but was permitted to include other relevant conduct indicated in the plea agreement. United States v. Mansfield, No. 4:16-CR-00114-1-GKF (N.D. Okla., plea agreement entered Nov. 15, 2016). Mansfield's plea provided that restitution was due to several other victim estates, including the Cox Estate, and that the acts committed against these other estates "gave rise to [the] plea agreement." Id. In rendering judgment, the criminal court ordered that Mansfield pay restitution to the other victim estates, including $5,225.53 to the Cox Estate. Id. (judgment entered March 16, 2017).
¶22 These findings of professional culpability and criminal guilt by the Oklahoma Supreme Court and the federal court are highly probative on the issue of whether Mansfield's conduct giving rise to the Cox suit comes within the purview of the crime/fraud exclusion in the Policies. Cox does not argue that Mansfield's conversion of funds from the Cox Estate was not "knowingly wrongful" or a "deliberate misrepresentation," but instead argues that there was other, lesser conduct that harmed Cox. In order to withstand summary judgment, Cox needed to present evidence that would show that he suffered a harm separate from that incurred as a result of the conduct for which Mansfield was disbarred and criminally convicted, i.e. that Cox was harmed from some negligent conduct apart from his conversion of estate assets. Cox made no such showing, and instead relied solely on his own allegations and the findings in the aforementioned proceedings against Mansfield. Cox therefore did not meet his burden.
¶23 Because the record fails to indicate that the claims in the Cox suit arise from conduct separate from that which has already been deemed knowingly wrongful or criminal, Cox's claims are excluded from coverage under the crime/fraud exclusion in the Policies. The trial court therefore properly concluded there was no dispute as to a material fact and Insurer was entitled to judgment as a matter of law.
¶24 AFFIRMED.
GOREE, C.J., and JOPLIN, P.J., concur.
FOOTNOTES
[1] The other Defendants in this case are interested persons with regard to these other allegedly mismanaged estates, whether as heirs, representatives, or decedents.
[2] In accordance with Oklahoma Supreme Court Rule 1.1(d), this Court reviewed the online district court docket via the OSCN website and took note of the disposition of the case.
[3] The policy provisions quoted here are identical in Policy 1 and Policy 2.




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2006 OK CIV APP 15, 131 P.3d 127, DUENSING v. STATE FARM FIRE AND CASUALTY CO.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1991 OK 24, 812 P.2d 372, 62 OBJ 802, Dodson v. St. Paul Ins. Co.
Discussed
 1953 OK 345, 263 P.2d 731, C.P.A. CO. v. JONES
Discussed
 1963 OK 87, 380 P.2d 950, AMERICAN MOTORISTS INSURANCE COMPANY v. BIGGS
Discussed
 2006 OK 43, 157 P.3d 100, REEDS v. WALKER
Cited
 2007 OK 38, 160 P.3d 959, LOWERY v. ECHOSTAR SATELLITE CORP.
Discussed
 2007 OK 65, 175 P.3d 340, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. COMBS
Discussed
 2008 OK 70, 188 P.3d 158, SCHOVANEC v. ARCHDIOCESE OF OKLAHOMA CITY
Discussed
 1974 OK 147, 534 P.2d 1293, WILEY v. TRAVELERS INSURANCE COMPANY
Discussed at Length
 2013 OK 48, 306 P.3d 544, SHEFFER v. CAROLINA FORGE COMPANY, L.L.C.
Discussed
 2015 OK 22, 350 P.3d 108, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MANSFIELD
Discussed
 2000 OK 36, 4 P.3d 695, 71 OBJ 1172, Copeland v. The Lodge Enterprises, Inc.
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA