Kathy G. **BOLDING**, Appellee,

v.

**PRUDENTIAL INSURANCE COMPANY
OF AMERICA, Appellant.**

No. 75920.

Court of Appeals of Oklahoma,
Division No. 2.

Nov. 3, 1992.

Eric R. Jones, Ardmore, for appellee.

Steve Lile, Lawton, for appellant.

BRIGHTMIRE, Judge.

The sole issue presented for review in this small claims case is whether the trial court properly held that the plaintiff's group health care policy covered the expense of air ambulance service, nursing care and ground transportation incurred in the interstate transfer of the critically ill insured from an Oklahoma hospital to the Scott–White Clinic in Texas.

We hold it did and affirm the judgment.

I

The operative facts are for the most part undisputed. On April 27, 1989, plaintiff Kathy G. Bolding was hospitalized at Memorial Hospital in Ardmore, Oklahoma, and was found to be hemorrhaging in the vicinity of her upper intestinal tract. She began receiving a series of blood transfusions and after some seven days her condition stabilized. Because, however, she had a history of peptic ulcer bleeding which had been

treated previously at the Scott–White Clinic in Temple, Texas, the plaintiff conferred with her Ardmore physician, Kevin H. Reed, M.D., about further medical care. He agreed with her that it was in her best interest to be transferred to the Scott–White Clinic.

By May 3, 1989, Dr. Reed considered the plaintiff's condition stable enough to make the trip to Temple, but it was such that she would have to be transported by air ambulance. And since she would have to make the trip with an IV in place he required that a registered nurse accompany the plaintiff in order that she "receive adequate hemodynamic monitoring" during the trip.

Consequently the plaintiff's family made arrangements for such a flight by private jet and engaged a registered nurse from Memorial Hospital to accompany her.[1]

The plaintiff lost a significant amount of blood during the flight and shortly after arriving at Scott–White the plaintiff began hemorrhaging again. Surgery was performed within two hours after her arrival. She survived and eventually recovered.

The plaintiff's insurer, Prudential Insurance Company, failed to pay the $1,860 claim for the expenses incurred for the flight to Texas. So on October 6, 1989, the plaintiff wrote to the carrier requesting an explanation for its refusal to pay such expenses. Prudential replied in a letter dated October 30, 1989, that the claim was "pending additional information which was requested from Dr. Reed on October 30, 1989."

The plaintiff sent the insurer a second letter November 9, 1989, complaining that she had heard nothing further about her claim. Prudential responded by letter dated November 17, 1989, which reads in pertinent part as follows:

"Your contract provides benefits for local ambulance travel only. There are situations where we allow benefits for an air ambulance; however, certain conditions have to be met. These are:

1) The hospital to which the patient is transported has special facilities necessary for treatment of the patient's condition and these are not available at the hospital the patient was transported from, nor available locally.

2) The hospital is the one that is normally used to treat patients from the area in which the air transport originated.

3) The distance and the emergency nature of the condition make ground transport impossible.

We still do not know if the above conditions were met. If they were met please have Dr. Reed advise us of this detailing how each was satisfied. If all three conditions were not met, the charges for air transport would not be eligible for benefit consideration under the terms of your Contract."

On December 6, 1989, the plaintiff wrote a third letter to the insurer in which she told it that it already had sufficient information to show that all three of its so-called conditions had been met. She further explained the seriousness of her condition, the medical need for going to the Texas institution—to obtain "necessary surgical disciplines [that] were not available" in Ardmore—and the medical necessity of having to be transported by air ambulance. She also informed the insurer of the fact that in the past she had "experienced serious problems with the quality of medical care available from local physicians...." And once again she demanded payment.

Prudential did not respond to this plea for payment and so, on January 4, 1990, the plaintiff sent the insurer a letter by certified mail demanding that it act upon the claim by January 12 or else she would turn the matter over to her attorney.

Prudential declined to pay the charges "for either ground ambulance to the airport, or air transport to Temple, TX" in a letter dated January 11, 1990, and explained why this way: The plaintiff's policy

---

1. The evidence was that a family friend furnished the private jet plane and charged only for the fuel used. This amounted to only some $1,600 as compared to the $3,600 cost of a CareFlight Helicopter flight which the plaintiff had made earlier during a similar emergency.

"only provides benefits for *local* professional ambulance service when ordered by the Doctor as required for medical care of sickness or injury"; [2] then added that "[a]dministratively, we recognize that occasionally a patient will have such a serious life threatening illness or injury that adequate specialized care is unavailable locally." In that instance only would the company "consider [a] transfer to the nearest facility which has the essential facilities to properly care for [the] patient." The company further indicated that "a patient's desire to be under the care of a particular doctor, even one familiar with that patient's history, is not sufficient medical justification for [a] non-local transfer." The company then proceeded to reject the claim after concluding that "[t]here is no evidence to indicate adequate medical care was not available without [a] transfer."

The plaintiff then filed this action on May 3, 1990. On June 6, 1990, after a bench trial, the trial court awarded judgment to the plaintiff for $1,060.[3]

The insurer appeals.

## II

As we mentioned earlier, the only issue presented is whether the trial court erred in construing the terms of the insurer's group health policy to include the expense of the plaintiff's interstate air ambulance travel.

The carrier contends it did. The argument is that the trial court's decision is at war with the dictates of 15 O.S.1991 § 154, which requires that the language of a contract is to govern its interpretation if the

policy language is clear and explicit, and is inconsistent with the additional requirement of § 160 which says that the words of a contract are to be taken to have been used in their ordinary and popular sense. According to the insurer, when these statutory guidelines are followed it becomes manifest that the policy language clearly and explicitly does not cover the plaintiff's air ambulance expense.

■■■ The argument is not persuasive. It overlooks the very fundamental fact that an insurance contract differs from an ordinary contract in that it is what the courts characterize as an adhesion contract.[4] It also overlooks a fundamental rule of construction, *i.e.,* if the terms of a policy are not clear, or are subject to two interpretations, that interpretation most favorable to the policyholder is to be adopted, and any doubt concerning the terms of an insurance contract must be resolved in favor of the insured. *Pitchford v. Electrical Workers' Benefits Ass'n,* 189 Okl. 82, 113 P.2d 591, 593 (1941). And beyond this the law requires that the policy be liberally construed consistent with the policy's general declaration of coverage and the object it is designed to accomplish and, if possible, to give effect to all of its provisions. *Dodson v. St. Paul Ins. Co.,* 812 P.2d 372 (Okl. 1991). *See also Panhandle Cooperative Royalty Co. v. Cunningham,* 495 P.2d 108 (Okl.1971).

■■■ The insurance policy submitted to the trial court as the one covering the plaintiff is a standardized printed form entitled "Your Group Insurance Booklet." [5]

---

2. Emphasis added.

3. The judge granted judgment for only one-half of the fuel expenses, the local ambulance service, and the nurse's fee. The plaintiff does not cross-appeal challenging the amount awarded.

4. An *"Adhesion Contract"* is defined in Black's Law Dictionary 38 (5th ed. 1979), as a "Standardized contract form offered to consumers of goods and services on essentially 'take it or leave it' basis without affording consumer [a] realistic opportunity to bargain and under such conditions that consumer cannot obtain desired product or services except by acquiescing in form contract," citing *Standard Oil Co. of Calif. v. Perkins,* 347 F.2d 379, 383 (9th Cir.1965).

5. The pertinent language of the major medical coverage portion of the policy reads:

"This Coverage pays benefits for many of the charges incurred for care and treatment of your or your Qualified Dependent's Sicknesses and Injuries. Not all charges are eligible; some are eligible only to a limited extent.

. . . .

A charge is an Eligible Charge if all of these conditions are met:

* It is made for a service or supply furnished to you or your Qualified Dependent.

* The service or supply is in the list below.

* The service or supply is ordered by a Doctor on account of the person's Sickness or Injury.

The general declaration of insurance coverage established by the policy and limited by its provisions normally determines the insurer's liability and the insured's respective rights under the contract by identifying what risks are covered and excluded by the policy. *Dodson*, 812 P.2d at 377.

■ It is to be noted that here the general declaration of subject policy does not limit or restrict the plaintiff's coverage to medical services or supplies provided by any particular doctor, facility or in a geographic location. Its coverage extends to what the policy refers to as "Eligible Charges." While certain "conditions" are required to be met to make the charges eligible, none restrict their incurrence to any particular location—geographic or otherwise. Nor does the term "Eligible Charges," as defined in the insurance contract, require such expenses to be incurred locally. More specifically, the policy does not exclude coverage for services and supplies as "unnecessary" if they are otherwise eligible charges even if "adequate medical care" is available without a transfer from one hospital to another.

It is undisputed that the claimed expenses were incurred by the named insured and that she was a "covered person" under the policy. It is also uncontroverted that air transportation was deemed necessary and therefore ordered by her treating physician, Dr. Reed. The doctor's testimony presented by affidavit stated "[t]hat in her specific case it was in her best interests medically to be transferred to Scott–White Hospital for evaluation and treatment by the physicians familiar with her situation rather than starting over here in Ardmore."

This leaves, then, the remaining question of whether the term "local" is ambiguous as used in the applicable listed eligible charge, *i.e.*, "ambulance use for local travel," in light of the object to be accomplished. We believe it is, particularly when considered with other provisions in the policy. And the evidence is clear that Prudential also considers it ambiguous in view of its admission in its January 11, 1990, letter to the plaintiff that it "administratively" defines "local" as meaning the "nearest facility which has the essential facilities to properly care for" an insured experiencing "a serious life threatening illness or injury." Indeed, it took a similar position at trial by arguing that the limiting term "local" as used in the policy means an "accredited hospital in [the insured's] area" and that when the particular facility located within the insured's area of residence is inadequate, "local" then means Oklahoma City because, as counsel represented to the court, "when people are injured in this area, people go to Oklahoma City."

The first problem we encounter with Prudential's current interpretation of the word "local" is that it finds no support in the express language of the policy. The policy does not define the word "local." In our opinion, the definition advanced by Prudential is overly restrictive in view of the fact that the policy does not limit the insured's choice of health care providers to a particular doctor or hospital. Surely Prudential has to recognize that the condition of an insured may require being taken to a nationally known facility such as the Scott–White Clinic or the Mayo Clinic.

The trial court evidently found that there was sufficient evidence—medical and otherwise—to find that the plaintiff was faced with a serious life-threatening illness which fully justified her transport by air ambulance to the Scott–White Clinic in Texas, where there existed essential facilities not available in the Ardmore area. Or to put it another way, there was sufficient evidence

---

* The person is a Covered Person when the charge is incurred.

. . . .

Services and Supplies
(1) Hospital room and board.

. . . .

(4) Ambulance use for local travel.
(5) Doctors' services for Surgical Procedures and for other medical care.

. . . .

Prudential will make a Determination of Need for each day of an Inpatient Hospital Stay. That Determination of Need is solely for the purpose of determining Eligible Charges under the Coverage, and is not medical advice.

to support a finding that the nearest medical facility affording the plaintiff the best chance for survival was the clinic in Temple, Texas. We decline to hold that in situations such as we have here—situations in which there is reasonable doubt about the adequacy of community medical care capability with respect to a serious life-threatening illness—subject insurance policy allows the insurer to substitute its judgment for that of the insured and her physician in deciding the uniquely personal question of whether or not the insured is receiving or can receive "adequate medical care" at a particular place. Of course, the insurer is free to challenge an insured's decision but if the matter gets to court and the claimant makes a prima facie showing of the propriety of a transfer, the burden shifts to the insurer to prove that the place of treatment chosen by the insured was unwarranted and therefore the charges for the transfer are not eligible ones.

### III

Here there is sufficient evidence to support the trial court's finding that the ground and air transportation and attendant nursing care expenses are eligible charges under the plaintiff's medical insurance policy.

AFFIRMED.

RAPP, P.J., and REIF, J., concur.