BIG B TRANSPORTATION, INC. v. U.S. INSURANCE GROUP

No. 8825SC679

(Filed 21 March 1989)

**Insurance § 6.1— insurance purchased by trucking company— trip lease agreement not covered**

An insurance policy purchased by plaintiff trucking company from defendant insurer did not cover a trip lease agreement whereby plaintiff furnished another company a truck and a driver to transport furniture from North Carolina to various points in the Midwest, since the policy in question provided coverage for plaintiff's legal liability "as a carrier under bills of lading or shipping receipts issued by [plaintiff]"; "bills of lading" and "shipping receipts" were both modified by the phrase "issued by the insured"; and no bill of lading or shipping receipt was issued by plaintiff for the furniture it transported under the trip lease agreement.

APPEAL by defendant from *Crawley (Jack), Judge.* Judgment entered 13 May 1988 in Superior Court, CATAWBA County. Heard in the Court of Appeals 25 January 1988.

*Sigmon, Sigmon & Isenhower, by W. Gene Sigmon, for plaintiff-appellee.*

*Golding, Crews, Meekins & Gordon, by Rodney Dean, for defendant-appellant.*

BECTON, Judge.

Defendant, U.S. Insurance Group, appeals from an order granting summary judgment to plaintiff, Big B Transportation, Inc. The

judge ruled that defendant insured plaintiff for losses resulting from a fire aboard one of plaintiff's trucks on 24 February 1985. We reverse and remand with instructions that the trial judge enter summary judgment for defendant.

I

Plaintiff, Big B Transportation, Inc. ("Big B"), is a trucking company. On 11 November 1984, Big B entered into an insurance contract with defendant, U.S. Insurance Group ("U.S. Insurance"). Under the policy, U.S. Insurance agreed to provide motor truck cargo coverage to Big B for a period of one year. In part, the policy provided that:

> This policy covers the legal liability of the Insured as a carrier under bills of lading or shipping receipts issued by the Insured with respect to shipments of lawful goods and merchandise . . . while such property is in the custody or control of the Insured, and while in the custody of connecting carriers. . . .

On 22 February 1985, Big B entered into a trip lease agreement with Cargo Carriers, Inc. ("Cargo Carriers") to transport furniture from Lexington, North Carolina, to various points in the Midwest. Big B furnished the truck for this shipment, and its employee, Alan K. Mummert, drove the truck. On 24 February 1985, a fire broke out in the truck's trailer, damaging the furniture.

Through its own insurer, Cargo Carriers paid the claims made by the owners of the damaged property. Cargo Carriers then brought a subrogation action against Big B. On 20 August 1987, Big B filed a declaratory action against U.S. Insurance, seeking to determine whether the policy it had purchased from U.S. Insurance covered the trip lease agreement. (On 30 April 1985, Big B added insurance coverage specifically covering such agreements.) Both Big B and U.S. Insurance prayed for summary judgment on this question. In an order dated 13 May 1988, the trial judge granted summary judgment for Big B. U.S. Insurance appeals.

II

The issue on appeal is the proper construction of the insurance policy language quoted above. U.S. Insurance contends that the policy clearly provides coverage only if Big B satisfied two conditions: first, that it acted as a "carrier," and second, that it issued a bill of lading or shipping receipt. Big B argues that the language

BIG B TRANSPORTATION, INC. v. U.S. INS. GROUP

[93 N.C. App. 233 (1989)]

of the policy is ambiguous. It contends that the phrase "issued by the insured" modifies only "shipping receipts," and that, therefore, U.S. Insurance covered the legal liability of Big B under any bill of lading while property was in the custody and control of Big B. Because we reject Big B's reading of the "bill of lading" language, we do not decide whether Big B or Cargo Carriers was the carrier of the furniture shipment damaged on 24 February 1985.

Insurance companies select the words used in their policies; hence, any ambiguity arising out of that wording is construed against insurers and in favor of beneficiaries. See *Wachovia Bank and Trust Co. v. Westchester Fire Insurance Co.*, 276 N.C. 348, 354, 172 S.E. 2d 518, 522 (1970). Ambiguity is not established, however, by the mere fact that the insurer and the beneficiary assert different constructions of the policy. *Id.* While the fact that the parties dispute the interpretation of the policy is some indication that ambiguity exists, ambiguity will not be established unless this court determines that the parties' varying interpretations fairly and reasonably arise from the policy language. See *St. Paul Fire and Marine Insurance Co. v. Freeman-White Associates, Inc.*, 322 N.C. 77, 83, 366 S.E. 2d 480, 484 (1988); *Westchester Fire Insurance*, 276 N.C. at 348, 172 S.E. 2d at 522; *see also Maddox v. Colonial Life and Accident Insurance Co.*, 303 N.C. 648, 650, 280 S.E. 2d 907, 908 (1981).

In our view, Big B unreasonably strains the language of the policy. We read the words "bill of lading" and "shipping receipts" as standing in apposition to one another, both being modified, therefore, by the phrase "issued by the insured." We think this is the only reasonable way to read the policy language. Our view is strengthened by the synonymous meanings of "bill of lading" and "shipping receipt." As defined by the Uniform Commercial Code, " 'Bill of Lading' means a *document* evidencing the *receipt* of goods *for shipment* issued by a person engaged in the business of transporting or forwarding goods, and includes an airbill." *See* N.C. Gen. Stat. Sec. 25-1-201(6) (1986) (emphasis added).

In *Westchester Fire Insurance*, our Supreme Court cautioned that courts must enforce contracts as the parties have made them and must not, under the guise of interpreting ambiguous provisions, remake contracts so as to impose liability on insurance companies for which the policyholders did not pay. 276 N.C. at 354, 172 S.E. 2d at 522. In our view, Big B has sought to have this court remake its contract with U.S. Insurance, and that we will not do.

III

No bill of lading or shipping receipt was issued by Big B for the furniture it transported under the trip lease agreement with Cargo Carriers. Consequently, the trial judge erred in ruling that U.S. Insurance had liability under the policy. The order granting summary judgment is reversed and remanded, with instructions that the trial judge enter summary judgment for U.S. Insurance.

Reversed and remanded.

Judges WELLS and JOHNSON concur.