**UNITED STATES FIDELITY AND GUARANTY COMPANY,
Plaintiff–Appellant,**

v.

**FIREMAN'S FUND INSURANCE COMPANY, Defendant–Appellee.**

**No. 88–3975.**

United States Court of Appeals,
Sixth Circuit.

Argued June 12, 1989.

Decided Feb. 20, 1990.

Mary E. Golrick (argued), Weston, Hurd, Fallon, Paisley & Howley, Cleveland, Ohio, for plaintiff-appellant.

Robert Eddy (argued), Gallagher, Sharp, Fulton & Norman, Cleveland, Ohio, for defendant-appellee.

Before JONES and RYAN, Circuit Judges; and PECK, Senior Circuit Judge.

PER CURIAM.

Plaintiff, United States Fidelity and Guaranty Company (USFGC), appeals the district court's order granting summary judgment for the defendant, Fireman's Fund Insurance Company (Fireman's Fund). For the following reasons, we affirm.

## I.

The action before us is a dispute involving USFGC and Fireman's Fund's duty to defend an insured, Maurice L. Naylon, Inc. (Naylon), an insurance agency. The Naylon insurance agency, as well as its officers and employees were sued by International Total Services, Inc. (ITS). ITS filed a five-count complaint in the United States District Court for the Northern District of Ohio which alleged claims based on, *inter alia,* libel and defamation, tortious interference with prospective business and contractual relations, and violations of the Ohio Deceptive Practice Act. ITS alleged that Naylon "intentionally and willfully carried out [a] scheme and plan by commencing a series of unlawful actions, threats and coercion directly and indirectly against ITS ... designed to coerce ITS" to employ Naylon as ITS' exclusive insurance agent. J.App. at 59. As part of this plan, ITS claims that Naylon (1) mailed a defamatory telegram to several of its customers, (2) sent insurance cancellation notices to its customers which contained "false and malicious statements ... concerning the financial and credit status of ITS" and (3) "knowingly, willfully and intentionally refused and failed to advise ... parties to whom cancellation notices were mailed that the notices of cancellation contained false allegations." *Id.* at 60–61. Although Naylon eventually mailed reinstatement notices to some of the people who had received the original cancellation notices, ITS claims

that Naylon "intentionally, willfully and in bad faith simultaneously mailed additional cancellation notices, without explanation, for each of the policies and bonds for which reinstatement notices were being mailed." *Id.* at 62.

Both parties in the instant action, USFGC and Fireman's Fund, insured Naylon. USFGC provided coverage under a comprehensive multi-peril policy. Fireman's Fund provided coverage under an insurance agents and brokers' errors and omissions policy. While USFGC agreed to defend Naylon after ITS filed its first complaint, Fireman's Fund refused to defend Naylon. The Fireman's Fund policy stated that it would

> pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of liability for breach of duty as ... Insurance Agents ... [as a result of any claim made against the Insured] ... *by reason of any negligent act, error or omission, whenever or wherever committed or alleged to have been committed ... in the conduct of any business conducted by or on behalf of the Insured in their capacity as ...* Insurance Agents....

J.App. at 47 (emphasis added). In addition, Fireman's Fund policy contains the following agreement to defend:

> the Company shall:
>
> (a) defend ... any suit against the Insured alleging such *negligent act, error or omission* and seeking damages on account thereof *even if such suit is groundless, false or fraudulent.*

*Id.* at 42 (emphasis added). However, the policy also states that the insurance policy would not cover any claim

> (a) for libel or slander;
>
> (b) brought about or contributed to by the *dishonest, fraudulent, or malicious act or omission* of the Insured....

*Id.* at 45 (emphasis added).

Fireman's Fund claims that it had no duty to defend Naylon because the claims in ITS' first and second complaints were based on intentional rather than negligent acts. ITS' third amended complaint added

a negligence count asserting that Naylon breached its "duty to exercise reasonable and customary care in the conduct of their business relationship" by sending improper and unauthorized cancellation notices. *Id.* at 241. Once ITS added the negligence count, Fireman's Fund admitted that it had a duty to defend Naylon and thereafter contributed one-half (*i.e.,* $150,000.00) of the amount of the settlement award.

USFGC maintains that Fireman's Fund had a duty to defend the *entire* case because the Fireman's Fund policy did not specifically exclude "intentional" acts from coverage, and because ITS' claims, if liberally construed, would be risks covered by the policy. USFGC defended the entire suit and claims that Fireman's Fund should reimburse it for half of the costs it expended in defending Naylon for the first and second complaints.

The district court, applying New York law, initially noted that "an insurer's duty to defend is 'broader than the duty to pay.'" J.App. at 198 (quoting *Goldberg v. Lumber Mut. Casualty Ins. Co.,* 297 N.Y. 148, 154, 77 N.E.2d 131, 133 (1948)). The court then observed that

> 'The duty to defend arises whenever the allegations in the complaint fall within the risk covered by the policy. It therefore includes the defense of those actions in which alternative grounds are asserted, even if some are without the protection purchased. Further, a policy protects against poorly or incompletely pleaded cases as well as those artfully drafted.... If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be.'

*Id.* at 198 (quoting *Ruder & Finn, Inc. v. Seaboard Surety Co.,* 52 N.Y.2d 663, 669–70, 422 N.E.2d 518, 521, 439 N.Y.S.2d 858, 861 (1981)). Finally, the district court stated that "the obligation to defend is excused 'only if it could be concluded as a matter of law that there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify' the insured under any provision of the insurance policy." *Id.* at 199 (quoting *Spoor–Lasher Co. v. Aetna Casualty & Surety Co.,* 39 N.Y.2d 875, 876, 352 N.E.2d 139, 140, 386 N.Y.S.2d 221, 222 (1976)).

In examining the facts of the case, the district court stressed that none of ITS' original claims "charge any negligent act or omission." J.App. at 203. The court recognized that one of the claims could possibly be construed as a negligence claim because it referred to Naylon's failure to act "without due consideration of the standards of reasonable care." *Id.* at 205. However, the court concluded that ITS was not alleging that Naylon committed negligent acts or omissions because ITS clarified this language by later asserting that Naylon's acts were done "with malice in fact ... with intent to harm ITS." *Id.* In addition, although the first complaint uses a phrase generally associated with negligence claims (*i.e.,* "knew or should have known"), the court ruled that after examining the phrase in the context of the complaint, that "[i]t is evident that ITS was seeking to state a claim for [intentional] slander or disparagement of . property" rather than a claim based on negligence because the "intentional aspect of the defendants' conduct is continually emphasized." *Id.* at 207, 210. Thus, the court concluded that "under Fireman's Fund's 'errors and omissions' policy covering the Naylons, 'there is no possible factual or legal basis on which [Fireman's Fund] might eventually be held to be obligated to indemnify' the Naylons." *Id.* at 212 (quoting *Spoor–Lasher Co., Inc., supra,* 352 N.E.2d at 140, 386 N.Y.S.2d at 222.) Accordingly, the court granted summary judgment for Fireman's Fund.

## II.

Both parties agree that the district court properly stated an insurance company's legal duty to defend under New York law. In deciding a motion for summary judgment, a court may enter summary judgment on a claim if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Al-

though the moving party has the burden of proving the absence of any genuine issue of material fact, the nonmoving party must "make a showing sufficient to establish the existence of an element essential" to her case and for which she "will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

#### A.

■ USFGC claims that since Fireman's Fund's policy does not *specifically* exclude intentional acts of the insured, it had a duty to defend all claims unless the claims fell specifically within the policy exclusions (*i.e.*, dishonest, fraudulent, criminal or malicious acts). New York law provides that "when the issue is the appropriate construction or interpretation to be placed upon an exclusionary clause in a policy, the carrier must establish that its construction or interpretation of the policy is the *only* construction that can fairly be placed thereon." *American Home Assur. Co. v. Port Authority of New York and New Jersey, Etc.*, 66 A.D.2d 269, 412 N.Y.S.2d 605, 609 (1979) (emphasis in original). Having carefully reviewed Fireman's Fund's exclusionary clause in its policy, we agree with the district court's determination that the only reasonable construction of the exclusionary clause is that Fireman's Fund contracted to provide coverage for negligent—not intentional—acts which Naylon committed. *Cf. Albert J. Schiff Associates v. Flack*, 51 N.Y.2d 692, 417 N.E.2d 84, 88, 435 N.Y.S.2d 972, 976 (1980) ("An errors and omissions policy is intended to insure a member of a designated calling against liability arising out of the *mistakes* inherent in the practice of that particular profession or business.") (emphasis added). Since Fireman's Fund's policy "was neither a standard general liability policy ... [n]or was it one comprehensive enough to protest against all business vicissitudes," to hold that Fireman's Fund had a duty to defend against claims which were based on Naylon's intentional, malicious conduct "would be to create additional coverage beyond that which was bought and paid for." *Albert J. Schiff Associates*, 417 N.E.2d at 88,

435 N.Y.S.2d at 976. Thus, we reject USFGC's first claim.

#### B.

USFGC also claims that, even if Fireman's Fund is required only to defend negligent acts or omissions, the district court erred as a matter of law because it examined the complaint to see if a *claim* for negligence was pled rather than examining whether the complaint alleged *facts* which were covered by the policy. USFGC contends that since ITS' first and second complaints made allegations which could constitute negligent acts, errors or omissions, Fireman's Fund was obligated to defend Naylon against this possible claim.

■ Although we generally agree with UFSGC's assessment that ITS' first and second complaints use terms generally associated with negligence actions, after examining these terms in the context of the entire complaint we agree with the district court's conclusion that ITS alleged that Naylon committed a series of intentional acts. If ITS had stated an alternative negligence claim in the first two complaints, Fireman's Fund clearly would have been obligated to defend the entire claim. Likewise, if the complaint had used vague or ambiguous language in describing Naylon's alleged activities, Fireman's Fund would have been obligated to defend the entire suit. The ITS complaint, however, was artfully pleaded and unambiguously alleged that Naylon committed malicious and intentional rather than careless and negligent acts. Because there was no possible factual or legal basis on which Fireman's Fund could be held to be obligated to indemnify Naylon, we hold that Fireman's Fund is not required to indemnify USFGC for the costs USFGC expended in defending Naylon against ITS' first and second complaints.

#### III.

Because we find that the district court properly awarded summary judgment, we need not address Fireman's Fund's additional claims. Accordingly, for the reasons

discussed above, we AFFIRM the district court.