972 F.2d 339
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
EMPLOYERS REINSURANCE CORPORATION, Plaintiff-Appellee,
v.
Joseph W. TEAGUE; Helen B. Teague; Steven Allen Barker;
Rita Strahowski; Swannee Beck, Lifetime Partners of PTL, as
representatives of a nationwide class consisting of 150,290
Lifetime Partners and of 27,839 persons who have partially
paid for Lifetime Partnerships, Defendants-Appellants,
and
James O. Bakker; David A. Taggart; Aimee Cortese, Defendants.
 No. 91-2299.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 7, 1992
Decided: August 14, 1992
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert D. Potter, District Judge.
 Wendell R. Bird, BIRD & ASSOCIATES, for Appellants.
 Michael Terry Medford, MANNING, FULTON & SKINNER, P.A.,for Appellee.
 David J. Myers, BIRD & ASSOCIATES; Thomas T. Anderson, Samuel F. Trussell, THOMAS T. ANDERSON & ASSOCIATES; Janathan P. Wallas, FERGUSON, STEIN, WATT, WALLAS, ADKINS & GRESHAM, for Appellants.
 Charles E. Nichols, Jr., MANNING, FULTON & SKINNER, P.A., for Appellee.
 W.D.N.C.
 AFFIRMED.
 Before WIDENER and PHILLIPS, Circuit Judges, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Joseph Teague, on behalf of a class of "lifetime partners" and partial lifetime partners in the Praise The Lord organization (PTL), appeals a summary judgment order which concluded as a matter of law that PTL's libel and allied torts indemnity policy (policy), issued to PTL by Employers Reinsurance Corporation (ERC), does not cover fraudulent activities of PTL founder, Jim Bakker. Because we agree with the district court's conclusion that the policy language at issue was unambiguous and that the policy does not cover Bakker's intentional acts, we affirm.
 
 I.
 
 2
 In 1987, PTL lifetime partners (including the Teague class) filed suit against Bakker and other PTL officials, alleging that Bakker had committed fraud in the lifetime partner program. The lifetime partners contributed to PTL in exchange for the right to stay in PTL accommodations for a certain number of nights each year. The partners sued when PTL could no longer provide the accommodations after its bankruptcy in 1987. They alleged that Bakker fraudulently oversold the lifetime partnerships and diverted PTL assets, knowing that PTL could not provide the promised accommodations. Bakker was convicted in 1989 of wire fraud, mail fraud and conspiracy for the same conduct. In January 1991, the lifetime partner class won a $129,747,618.00 civil judgment against Bakker for common law fraud.[1]
 
 
 3
 During the time of Bakker's fraudulent activities, PTL held an ERC insurance policy protecting PTL against liability resulting from libel, slander, invasion of privacy, copyright infringement, trespass in the acquisition or publication of a story, and other tortious activities. Section I(a)(7) of the policy covers liability arising from "negligent error, omission, misstatement or misleading statement." This language is at the heart of the instant dispute.
 
 
 4
 ERC filed this diversity action against Bakker in April of 1990 in the Western District of North Carolina. ERC sought a declaration that its insurance policy does not indemnify Bakker for claims by defrauded lifetime partners. The Teague class intervened as defendants, arguing that the policy covers indemnification for Bakker's fraudulent activities. The district court granted ERC's motion for summary judgment, holding that the policy language at issue was unambiguous and that it did not include coverage for Bakker's intentional misstatements. Teague's appeal followed.
 
 II.
 
 5
 We review a summary judgment de novo. Cohn v. Bond, 953 F.2d 154, 157 (4th Cir. 1991). Summary judgment is proper where the pleadings, depositions, interrogatories and admissions on file, with any affidavits, show that there is no genuine issue as to any material fact and that a party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c). Since there is no dispute regarding the facts, and the matter is reduced to a narrow question of contract interpretation, we must decide only whether ERC is entitled to judgment as a matter of law under the policy. Radiator Specialty Co. v. First State Ins. Co., 651 F. Supp. 439 (W.D.N.C. 1987), aff'd, 836 F.2d 193 (4th Cir. 1987).
 
 
 6
 Teague argues that in the phrase "negligent error, omission, misstatement or misleading statement," the adjective"negligent" modifies only "error," resulting in coverage for any type of misstatement, including fraudulent misstatements. Teague alternatively argues that the phrase is at least ambiguous and that the district court therefore erred in refusing to consider, as aids in construing the policy, a comparison of the PTL policy with other ERC media policies and expert testimony interpreting the language. This extrinsic evidence, Teague argues, supports the conclusion that the policy covers common law fraud. Although the two lines of argument are intimately tied, we consider first whether the language in question is ambiguous and then whether that language, on its own and in the context of the policy, includes coverage for fraudulent misstatements.
 
 A.
 
 7
 Teague contends that the clause covering "negligent error, omission, misstatement or misleading statement" is at least ambiguous to the extent that it is not clear whether "negligent" modifies all four terms in the series. Teague argues that "negligent" modifies only error and that the policy thereby covers nonnegligent or intentional omissions, misstatements or misleading statements. The district court rejected this argument, finding that the clause is unambiguous and that, in accordance with grammatical rules and popular usage, the adjective "negligent" modifies every word in the series. We agree.
 
 
 8
 Under North Carolina law, which governs the resolution of this diversity matter, we can not find ambiguity merely on the basis of a difference of opinion between the parties on the interpretation of a policy provision. Brown v. Lumbermens Mutual Casualty Co., 390 S.E.2d 150, 153 (N.C. 1990). Ambiguity is not established by party disagreement unless the parties' varying interpretations fairly and reasonably arise from the policy language. Big B Transportation, Inc. v. United States Insurance Group, 377 S.E.2d 278 (N.C. App. 1989). We believe Teague's interpretation of the clause is strained, and we agree with other courts which have held, construing comparable provisions, that the adjective preceding a series of nouns modifies every noun in the series. See United States Fidelity & Guaranty Co. v. Fireman's Fund Insurance Co., 896 F.2d 200, 203 (6th Cir. 1990) (the only reasonable construction of "negligent act, error, or omission" is that the policy covers only negligent behavior); Golf Course Superintendents Assn. v. Underwriter's at Lloyd's, London, 761 F. Supp. 1485, 1490 (D. Kan. 1991) (in the phrase "negligent act, error, omission misstatement or misleading statement," "negligent" modifies every relevant item in the series). Teague points to only one case to the contrary. In Aitchison v. Founders Ins. Co., 333 P.2d 178 (Cal. 1958), the court held that the phrase "negligent error, act, or omission" included coverage for errors which were the result of nonnegligent, honest mistakes. However, Aitchison alone does not create enough uncertainty regarding the meaning of the phrase to establish ambiguity. Even Aitchison did not interpret the clause to include intentional acts.
 
 
 9
 Under North Carolina law, which controls, unambiguous policy language is to be construed without resort to extrinsic evidence to "aid" in its interpretation. Metric Constructors, Inc. v. Industrial Risk Insurers, 401 S.E.2d 126, 128 (N. C. 1991). The district court therefore properly declined to consider Teague's proffers of extrinsic evidence, specifically, an expert's opinion that the phrase was intended to cover intentional misstatements and Teague's assertion that ERC intended to cover fraud because it deleted from the PTL policy a fraud exclusion it normally includes in media policies.
 
 B.
 
 10
 We agree with the district court's conclusion that the unambiguous policy clause, taken on its own and in the context of the policy as a whole, does not cover intentional misstatements. Reading "negligent" as modifying every noun in the series of covered risks, "negligent errors, omissions, misstatements or misleading statements," intentional misstatements simply are not included. This interpretation is explicitly supported by Golf Course and Fireman's Fund. It is implicitly supported by a prior decision of this court in Western World Ins. Co. v. Harford Mutual Ins. Co., 784 F.2d 558, 462-63 (4th Cir. 1986), in which we opined in dicta that an intentional action would not be covered by policy language covering "negligent acts, errors, or omissions."
 
 
 11
 Accordingly, we agree with the district court's determination that the unambiguous phrase in the policy and the policy as a whole do not include coverage for the type of fraudulent misstatement which formed the basis of the civil judgment against Bakker.[2]
 
 III.
 
 12
 For the foregoing reasons, we affirm the district court's summary judgment for ERC. The PTL policy does not include coverage for intentional misstatements, and ERC has no duty to indemnify Bakker for the civil judgment levied against him for common law fraud.
 
 AFFIRMED
 
 
 [1]
 Two other PTL officials, Aimee Cortese and David Taggert, were also defendants in the civil action, but the jury found for them on all claims
 
 
 [2]
 So holding, we need not consider ERC's alternative contention that if the policy were read as covering the fraud here in issue, it would be void as against public policy. See Graham v. James F. Jackson Assocs., Inc., 352 S.E.2d 878, 881 (N.C. App. 1987) ("The general rule prohibiting insurance against liability for criminal acts advances a legitimate public policy interest against relieving a wrongdoer from responsibility for his own wilful and wrongful act, in order that the commission of such acts not be encouraged.")