991 F.2d 806
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UTICA MUTUAL INSURANCE COMPANY, INC.,
Plaintiff/Counterclaim-Defendant-Appellee,
v.
GATEWAY INSURANCE AGENCY, INC., an Oklahoma corporation,
Defendant/Counterclaimant-Appellant,
Tri-State Insurance Company, an Oklahoma corporation;
Silvey Companies, Defendants-Appellants,
Jerry Wayne Ross and Judy Ross, Defendants.
 No. 92-5097.
 United States Court of Appeals, Tenth Circuit.
 April 21, 1993.
 
 Before McKAY, Chief Judge, and HOLLOWAY and BARRETT, Circuit Judges.
 ORDER AND JUDGMENT*
 BARRETT, Senior Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 We are called upon here to review a judgment of the magistrate judge[1] resolving a dispute over the interpretation of two insurance policies issued by plaintiff Utica Mutual Insurance Company, Inc. (Utica) to defendant Gateway Insurance Agency, Inc. (Gateway). These include an errors and omissions policy insuring against legal liabilities arising out of the negligent execution of Gateway's business activities, and an umbrella endorsement providing excess coverage for such professional liability and supplemental coverage for personal injury, property damage, and advertising liability.
 
 
 3
 This dispute arises out of a lawsuit pursued in Oklahoma against Gateway and defendants Tri-State Insurance Company and Silvey Companies (codefendants) for wrongful denial of coverage under an automobile policy issued by codefendants and sold by Gateway. The state action proceeded to trial against Gateway on theories of negligence and intentional infliction of emotional distress. Utica defended Gateway under a reservation of rights, acknowledging coverage on the negligence claim but disclaiming coverage for the intentional tort. Ultimately, the jury returned a verdict for Gateway on the negligence claim, but awarded substantial damages against Gateway for intentional infliction of emotional distress. Gateway appealed and the case was eventually settled by the parties.
 
 
 4
 In the meantime, Utica commenced this action seeking a declaratory judgment confirming that it had not assumed any obligations with respect to the intentional tort claim pending in state court under the two policies identified above. Gateway answered and asserted a counterclaim for bad faith breach of contract and intentional infliction of emotional distress. On cross-motions for summary judgment, the magistrate judge ruled that the claim successfully pursued against Gateway fell outside the scope of the Utica policies. Accordingly, judgment was entered for Utica as both plaintiff and counterclaim-defendant, and this appeal followed.
 
 
 5
 The standard governing appellate review of the magistrate judge's disposition in this case is dictated by both its procedural form and its legal substance. As a general matter, we review all summary judgment rulings de novo, applying Fed.R.Civ.P. 56(c) in the same manner as the trial court. See Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). Furthermore, the interpretation of an unambiguous contract, and the underlying conclusion that no ambiguity exists, are matters of law to be resolved by the trial judge, see Resort Car Rental Sys., Inc. v. Chuck Ruwart Chevrolet, Inc., 519 F.2d 317, 320 (10th Cir.1975); Dodson v. St. Paul Ins. Co., 812 P.2d 372, 376 (Okla.1991), whose determinations are subject to plenary review for that reason as well, see Key v. Liquid Energy Corp., 906 F.2d 500, 505 (10th Cir.1990); see, e.g., LaSorsa ex rel. LaSorsa v. UNUM Life Ins. Co., 955 F.2d 140, 146 (1st Cir.1992). Under this standard, then, we hold the pertinent policy provisions are not ambiguous and, for the reasons to follow, affirm the magistrate judge's determination denying coverage thereunder.
 
 
 6
 The opening "insuring clause" of the errors and omissions policy clearly indicates that coverage is limited to liabilities arising from Gateway's professional negligence:
 
 
 7
 [Utica agrees] [t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages by reason of liability arising out of any negligent act, error or omission ... in conduct of the insured's business ..., which shall include the related activities connected therewith of notarizing ..., appraising real estate and claims adjusting with respect to policies written or placed through the insured ..., and servicing of the insurance business of others....
 
 
 8
 Aplt.App. at 56 (emphasis added). Consistent with the nature of such coverage, liability for claims relating to bodily injury and property damage is expressly excluded. Id. In light of these provisions, Gateway conceded below that there was no coverage for the intentional infliction of emotional distress claim under the errors and omissions policy itself, see, e.g., United States Fidelity & Guar. Co. v. Fireman's Fund Ins. Co., 896 F.2d 200, 201, 203 (6th Cir.1990) (denying coverage for intentionally tortious conduct under policy insuring negligent errors and omissions); Correll v. Fireman's Fund Ins. Cos., 505 So.2d 295, 295-97 (Ala.1986) (same), but argued the claim fell within the augmented coverage afforded by the associated umbrella endorsement. Aplt.App. at 48. The same argument is advanced on appeal.
 
 
 9
 As noted briefly above, the umbrella endorsement accomplished two distinct objectives. First, it broadened Gateway's liability coverage to reach areas of tort exposure beyond the narrow confines of the professional negligence risk that is the object of the errors and omissions policy. Particularly pertinent in this regard are the following provisions obligating Utica to insure Gateway against personal injury claims involving the infliction of emotional stress:
 
 I. COVERAGE
 
 10
 [Insurer agrees] [t]o pay on behalf of the insured the ultimate net loss ... which the insured shall become obligated to pay:
 
 
 11
 (a) Personal Injury Liability. For damages, including damages for care and loss of services, because of personal injury ... sustained by any person or persons, caused by an occurrence.
 
 
 12
 * * *
 
 
 13
 * * *
 
 I. DEFINITIONS
 
 14
 (a) "Personal injury" means (1) bodily injury, sickness, disease, disability, shock, mental anguish and mental injury....
 
 
 15
 (b) ...
 
 
 16
 "Occurrence." With respect to Coverage I(a) ... "occurrence" means either an accident happening during the coverage period or a continuous or repeated exposure to conditions which unexpectedly and unintentionally causes injury ... during the coverage period.
 
 
 17
 Aplt.App. at 58, 61. The second effect of the umbrella endorsement was to deepen Gateway's existing coverage "[f]or claims ... arising out of the performance of professional services for others." Id. at 58. In keeping with the purpose of this provision, however, the extra coverage was afforded "solely to the extent that such claims are insured under the professional liability [i.e., errors and omissions] policy to which this endorsement is attached." Id.; see also id. at 60 (umbrella endorsement provides coverage only for professional liability in excess of errors and omissions policy limits).
 
 
 18
 On appeal, Gateway assumes that the applicability of the personal injury liability provision would be sufficient, in itself, to establish coverage under the umbrella endorsement and, thus, devotes its efforts to persuading this court that the references to accidental happenings and unexpected, unintentional causes in the quoted definition of "occurrence" do not, at least as a matter of law, exclude the intentional infliction claim pursued against it under Oklahoma law. See Aplt.Op.Br. at 12-22. We need not express an opinion on this point, however, because we hold that Gateway's underlying assumption regarding the controlling provision of the umbrella endorsement is incorrect.[2]
 
 
 19
 Our analysis of the policies under review is guided by established principles of interpretation recently summarized by the Oklahoma Supreme Court in Dodson v. St. Paul Insurance Co., 812 P.2d 372. A policy's general declaration of insurance coverage determines the insurance carrier's liability by identifying which risks are covered and which excluded by the policy. Id. at 377. Pertinent exclusions are read seriatim, incrementally eliminating coverage by limiting or removing risks previously specified as covered. Id. Thus, in this case, while the umbrella endorsement's personal injury liability provision initially specifies coverage for a potentially broad range of claims, assertedly including the state claim pursued against Gateway, the question of Utica's liability cannot be answered in isolation from subsequent provisions that may eliminate or limit such coverage. See id. at 376 (provision of insurance policy may not "be taken out of context and narrowly focused upon ... so as to import a favorable consideration to either party").
 
 
 20
 Ultimately, this case does not turn on the character of the tortious harm inflicted by Gateway, but on the kind of activity out of which that harm arose. Specifically, the injury suffered by Gateway's insured was the result of improper claims adjusting, which is identified as a professional service by the subject policies. See Aplt.App. at 56 (specifically identifying claims adjusting as business activity covered by errors and omissions policy); see also id. at 58 (professional liabilities covered in umbrella endorsement are those specified in errors and omissions policy). This characterization of claims adjusting is consistent with the general understanding of professional services reflected in the case law. See, e.g., American Fellowship Mut. Ins. Co. v. Insurance Co. of N. Am., 282 N.W.2d 425, 426-28 (Mich.Ct.App.1979) (claims adjusting falls within scope of insurance agency's professional services); cf. Curtis Ambulance of Fla., Inc. v. Board of County Comm'rs of Shawnee County, 811 F.2d 1371, 1379-80, 1382 (10th Cir.1987) (applying same broad definition of professional services followed in American Fellowship ).
 
 
 21
 Accordingly, even if the state claim against Gateway triggered the umbrella endorsement's initial grant of coverage, it also clearly fell within the subsequent provision relating more specifically to professional liability, which, as already noted, expressly excludes any claims not covered by the underlying errors and omissions policy. Because the latter concededly does not reach the intentional infliction claim pursued against Gateway, the umbrella endorsement's professional liability provision consequently precludes recovery in this case.[3] See American Fellowship, 282 N.W.2d at 426-28 (personal injury claim otherwise covered by insurance agency's liability policy excluded on basis of professional services provision). See generally Aetna Casualty & Sur. Co. v. Dannenfeldt, 778 F.Supp. 484, 496-97 (D.Ariz.1991) (noting "far broader range of activities" encompassed within definition of professional services where used as operative term in exclusion to general liability coverage).
 
 
 22
 Opposing this result, Gateway contends, in effect, that the inclusive terms of the personal injury liability provision should prevail over the exclusive terms of the professional liability provision whenever wrongful professional conduct has caused personal injury. This position is unacceptable for at least two reasons. First of all, it reverses the proper order of policy interpretation by employing a prior coverage clause to negate a subsequent explicit exclusion. See Dodson, 812 P.2d at 377. Secondly, by imposing coverage for a range of injuries arising out of Gateway's professional activities, which the policies' provisions relating specifically to professional liability coverage were tailored to avoid, this interpretation not only eviscerates the limitation imposed on the excess coverage in the umbrella endorsement, but substantially circumvents the exclusions in the underlying errors and omissions policy as well.[4] In contrast, the result we reach here is consistent with the established rule that " '[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others.' " Id. at 377 n. 11 (quoting Okla.Stat. tit. 15, § 157). The general personal injury liability provision in the umbrella endorsement affords coverage for a broad range of torts that fall outside the narrow compass of the errors and omissions policy, but does not affect the parameters of the professional liability protection carefully structured by the errors and omissions policy and the associated excess-coverage component of the umbrella endorsement.
 
 
 23
 Gateway also contends, in extremely conclusory fashion, that the magistrate judge erred "in failing to find that Utica had a duty to provide a defense under the policy based upon the claim of negligence." Aplt.Op.Brief at 12. It is undisputed that the negligence claim was defended by Utica, was resolved in favor of Gateway, and played no further role in the underlying litigation against Gateway. Indeed, the magistrate judge duly noted these collateral facts before turning to the intentional tort claim actually in controversy in this proceeding. See Aplt.App. at 44. Gateway's objection in this regard is meritless.
 
 
 24
 The judgment entered by the magistrate judge for the United States District Court for the Northern District of Oklahoma is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The parties consented to disposition of this case by the magistrate judge. See 28 U.S.C. § 636(c)(1). We therefore have jurisdiction to review his decision directly, without intervening consideration by the district court, pursuant to § 636(c)(3)
 
 
 [2]
 While the district court touched only briefly on the matter we deem dispositive, we " 'are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.' " Griess v. Colorado, 841 F.2d 1042, 1047 (10th Cir.1988) (quoting Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir.1987))
 
 
 [3]
 We note that this case does not involve a situation in which personal injury liability is based on a covered claim for general negligence in addition to, and independent of, the excluded claim for professional liability. Cf. Guaranty Nat'l Ins. Co. v. North River Ins. Co., 909 F.2d 133, 137 (5th Cir.1990) (permitting recovery under general liability policy where loss independently caused by covered negligence and excluded professional services)
 
 
 [4]
 The present case provides an apt illustration: based on the overriding effect it ascribes to the umbrella endorsement's provision for personal injury liability protection, Gateway seeks to make Utica pay on a professional liability claim that, as such, is clearly and consistently excluded by the pertinent coverage provisions--primary and excess--in both policies