NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0613n.06
Filed: July 20, 2005

No. 04-1117

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

SARA A. ROBINSON, personal representative
of the Estate of EDDIE ROBINSON, III,
deceased,

       Plaintiff-Appellant,

v.

TOWNSHIP OF REDFORD, OFFICER
DIPRIMA, individually and in his official
capacity, OFFICER TURNER, individually and
in his official capacity,

       Defendants-Appellees.

                                     /

On Appeal from the United
States District Court for the Eastern
District of Michigan

BEFORE:    BOGGS, Chief Judge; RYAN and ROGERS, Circuit Judges.

RYAN, Circuit Judge.    The plaintiff, Sara A. Robinson, the personal representative of the estate of Eddie Robinson, III, appeals from the district court's grant of summary judgment in favor of the defendant police officers on the grounds of qualified immunity and the consequent dismissal of Robinson's substantive due process claim brought under 42 U.S.C. § 1983. Robinson also appeals from the district court's grant of summary judgment in favor of the Township of Redford with respect to her failure-to-train claim. For the following reasons, we will affirm.

**I.**

On January 28, 2000, Officers Albert Diprima and Lawrence Turner of the Redford Township Police Department responded to a burglar alarm at the Advanced Custom Van and Pick Up Shop in the Township of Redford. Diprima arrived at the scene first and Turner joined him a short time later. Diprima noticed that the pane of glass in the front door of the shop had been broken. Unable to gain entry into the building, the officers asked their dispatcher to contact the key holder. Eddie Robinson, an employee of the shop, arrived shortly thereafter with the key.

After unlocking the front door, Diprima and Turner entered the building first, followed by Robinson. According to the officers' deposition testimony, they initially searched two small rooms near the front entrance, including the "refrigerator room," before proceeding to a larger warehouse area in the rear of the building. Meanwhile, Diane Wolf, one of the owners of the shop, arrived. After the officers completed their search, Wolf expressed her suspicion to the officers that someone was still in the building and asked them to check the upstairs area. The officers allegedly assured her that they had searched the upstairs and the warehouse area and that "there was no one back there." Wolf remained concerned, stating: "I feel there is someone still here." When asked why she felt that way, Wolf opened the cash register and wondered aloud why the cash had not been stolen. The officers surmised that they had responded so quickly that the intruder must have fled from the building. According to Wolf, one of the officers then said: "I assure you that there is no one in the building." Wolf testified that Robinson was standing next to her when this statement was made. Both Diprima and Turner deny making any such representations.

The officers advised Wolf to call a board-up company to secure the front door and then drove away. After the police left, Robinson and Wolf sat in the front office area while

waiting for the board-up company to arrive. Wolf later testified that she would not have remained in the building had the officers not assured her that it was safe to stay. Approximately 30 minutes after the police left, Robinson walked into the refrigerator room and peeked around a corner created by a filing cabinet. A man wearing a ski mask and holding a gun suddenly sprang out from around the corner. Robinson and the intruder began wrestling for control of the gun while Wolf ran out of the building. Wolf heard several shots fired and ran to a nearby gas station to call the police. Within minutes, the police arrived and arrested a suspect fleeing the scene. Robinson, who had been shot three times, was taken away in an ambulance and later died from a fatal chest wound. The suspect, Marcus Staple, was subsequently charged and convicted for Robinson's murder.

The parties have presented conflicting evidence regarding the extent of the officers' search of the building. During their depositions, Diprima and Turner testified that they both searched the refrigerator room where the intruder was hiding. The officers also testified that they each searched the room a second time with the lights turned on, and that Wolf had searched the room herself. Contrary to this testimony, Staple claimed in an affidavit that he hid in the refrigerator room the entire time the officers were in the building, that no one came into that room while he was hidden there, and that the light in that room was never turned on. Further, Wolf testified that she never went into the refrigerator room that night.

On July 10, 2000, Sara A. Robinson, the widow of Eddie Robinson and the personal representative of his estate, filed suit against Diprima and Turner, in both their individual and official capacities, and against the Township of Redford under 42 U.S.C. § 1983. Robinson alleged that Diprima and Turner, by failing to perform a thorough search and

making false assurances about the safety of the building, violated the decedent's substantive due process right to personal security and to bodily integrity. She also alleged that "Redford Township developed and maintained policies, customs, or practices exhibiting deliberate indifference to the constitutional rights of the public, which caused the violation of [the decedent's] rights."

The defendants moved to dismiss Robinson's complaint under Federal Rule of Civil Procedure 12(b)(6). The motion was granted by the district court. On appeal, a panel of the Sixth Circuit reversed, concluding that Robinson had properly stated a substantive due process claim under the "state-created-danger" theory. Robinson v. Township of Redford, No. 01-1196, 2002 WL 31398974, at *4 (6th Cir. Oct. 17, 2002). In an unpublished opinion, the court explained that more discovery was needed before it could be determined whether the officers had merely failed to protect the decedent from attack—an omission that would not implicate the Due Process Clause—or whether the officers had affirmatively created the danger that led to the decedent's murder.

> It is in the gray area between creating a danger and failing to protect from a danger that this case lies. Defendants did not protect Robinson from the intruder in his business offices. Whether this lack of protection was a failure to act or a direct cause of harm to Robinson cannot be determined upon the pleadings as a matter of law. Rather, there must be some factual inquiry into what was done and said by the police officers who responded to the burglar alarm at Robinson's business. . . . The state-created-danger theory is a narrow exception, and it is possible that plaintiff's claim does not fall within its limited boundaries. Plaintiffs [sic] must be given an opportunity . . . to delve into the circumstances of 28 January 2000 and to determine if the acts, omissions, or assurances of the defendants are sufficient to impose an affirmative duty upon the Township and its officers.

Id.

The case was remanded to the district court and the parties engaged in discovery. The defendants eventually filed a motion for summary judgment, arguing that the officers were entitled to qualified immunity and that there was no evidence of inadequate training by the Township of Redford. On December 18, 2003, the defendants' motion was granted by the district court. In its Memorandum Opinion and Order, the court concluded that the officers were entitled to qualified immunity because the officers did not violate the decedent's constitutional right to substantive due process, and because any such right was not clearly established at the time of the murder. The court also dismissed the claim against the Township because Robinson could not establish any constitutional violation. Robinson subsequently appealed from the district court's decision.

**II.**

We review de novo a district court's order granting a motion for summary judgment. Andersons, Inc. v. Consol, Inc., 348 F.3d 496, 501 (6th Cir. 2003). In conducting such a review, we must assume the truth of the non-moving party's evidence and must construe all inferences from that evidence in the light most favorable to the non-moving party. Id.

Section 1983 imposes civil liability on any person who, acting under color of state law, deprives another person of the "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "While government officials may be subject to § 1983 actions for violating an individual's constitutional right, a plaintiff must overcome the officials' qualified immunity in bringing such an action." Flaskamp v. Dearborn Pub. Sch., 385 F.3d 935, 940-41 (6th Cir. 2004). The Supreme Court has "provid[ed] government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought

consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987).

A court confronting a claim of qualified immunity must proceed through a two-step analysis. First, the court must determine whether "the facts alleged show the officer's conduct violated a constitutional right[.]" Saucier v. Katz, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id. Second, if the facts alleged show that a constitutional right has been violated, the court must determine "whether the right was clearly established." Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202.

## A. Alleged Constitutional Violation

Under Saucier, we must first consider whether the evidence, taken in the light most favorable to Robinson, demonstrates the occurrence of a constitutional violation. This court has recognized a fundamental constitutional "'right under the substantive component of the Due Process Clause to personal security and to bodily integrity.'" Kallstrom v. City of Columbus, 136 F.3d 1055, 1062-63 (6th Cir. 1998) (quoting Doe v. Claiborne County, 103 F.3d 495, 507 (6th Cir. 1996)). Robinson contends that Diprima and Turner violated this right when they falsely assured the decedent that there were no intruders in the building and failed to protect him from the attack of Staple. Robinson would thus impose liability on the officers for the private act of violence that Staple inflicted upon the decedent. In general, however, the "'substantive' component of the Due Process Clause does not 'requir[e] the State to protect the life, liberty, and property of its citizens against invasion by

private actors.'" Town of Castle Rock v. Gonzales, 545 U.S. ___, 125 S. Ct. 2796, 2803 (2005) (quoting DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195 (1989)).

> In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

DeShaney, 489 U.S. at 200.

Although the states do not have an affirmative duty under the Due Process Clause to protect citizens from private acts of violence, this court has identified two exceptions to this general rule. First, under the "special relationship" exception, a state may have an affirmative duty to protect an individual against private acts of violence when the state restrains the individual from acting on his own behalf, as when the state takes the individual into custody. Kallstrom, 136 F.3d at 1066. Second, under the "state-created-danger" exception, a state may be liable in non-custodial settings for "affirmative acts . . . which either create or increase the risk that an individual will be exposed to private acts of violence." Id.

Robinson does not contend that the defendants' liability is predicated on any "special relationship" that existed between the officers and the decedent. Rather, she argues that Diprima and Turner are liable under the "state-created-danger" theory of liability because, "[b]y falsely assuring [the decedent] that the premises were safe, the police increased the likelihood that [the decedent] would have a surprise encounter with the hidden intruder and be seriously injured or killed."

To establish liability for a state-created danger, a plaintiff must demonstrate:

1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; 2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and 3) the state knew or should have known that its actions specifically endangered the plaintiff.

Cartwright v. City of Marine City, 336 F.3d 487, 493 (6th Cir. 2003). Although the phrase "knew or should have known" is generally associated with negligence claims, United States Fidelity & Guaranty Co. v. Fireman's Fund Insurance Co., 896 F.2d 200, 202 (6th Cir. 1990), the Supreme Court has held that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property," Daniels v. Williams, 474 U.S. 327, 328 (1986). Thus, we have clarified that, to prove the third element of a state-created-danger claim in a noncustodial case such as the one before us, a plaintiff must show that the government official acted with deliberate indifference. Bukowski v. City of Akron, 326 F.3d 702, 710 (6th Cir. 2003). Under this standard, "the official must 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Sperle v. Mich. Dep't of Corr., 297 F.3d 483, 493 (6th Cir. 2002) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994))).

The affirmative acts upon which Robinson would base liability are the assurances allegedly made by the officers after their search was completed "that there [was] no one in the building." In our view, the officers' representations did not violate the decedent's right to substantive due process. First, we note that the decedent was at risk of serious injury or death even before he received any assurance from the officers that the premises were

safe. The pretrial record establishes that after unlocking the front door of the shop, the decedent accompanied the officers into the building while they conducted their search, even as Staple remained crouched and hidden near the front entrance. Because the search of the building was fraught with danger from the very beginning, it is doubtful that the officers' assurances created or increased the risk of harm to the decedent. Second, the causal relationship between the officers' assurances of safety and Robinson's murder is tenuous in light of intervening choices made by the decedent. The officers, as the district court noted, did not force or instruct the decedent to remain in the building. During the half hour in which Robinson waited in the shop after the police left, he could have waited outside the building or left the premises entirely. Indeed, when Wolf told Robinson to go to his bingo game, he refused. While it is certainly admirable that Robinson remained with Wolf under the circumstances, his decision to do so is not attributable to the officers' representations. We acknowledge that the surprise attack by Staple might have been avoided had the officers searched the refrigerator room. But the officers' alleged failure to search that room, as opposed to their assurances of safety, does not constitute a substantive due process violation because a "failure to act is not an affirmative act under the state-created danger theory." Cartwright, 336 F.3d at 493.

Even assuming the officers' representations increased the risk of harm to the decedent, the record evidence does not indicate that those representations were spoken with deliberate indifference. Taking the evidence in the light most favorable to Robinson, no reasonable inference can be made that the officers actually suspected that a substantial risk of serious harm existed when they told the decedent that no one was in the building. Although the signs of a break-in suggested to the officers that there might be an intruder

in the building, there is no evidence showing that, following their search, the officers knew an intruder was inside. The officers testified that they spent 20 to 40 minutes searching the premises, after which they were both confident that the building was safe. It is true that both officers conceded that a less than thorough search could possibly endanger nearby citizens. But even assuming that the officers did not search the refrigerator room, we cannot conclude that the officers actually inferred that a substantial risk of harm existed upon assuring Wolf and Robinson that the premises were safe. Indeed, Wolf, whose testimony was certainly not favorable to the defendants, testified that the officers "really thought that the person was gone." At most, the evidence suggests that the officers were negligent in their search and subsequent representations, an insufficient basis upon which to state a due process claim. Daniels, 474 U.S. at 328.

## B. Clearly Established Law

The district court's grant of summary judgment was also appropriate because, even assuming Diprima and Turner violated the decedent's right to substantive due process, reasonable officers in their position would not have been on notice that a clearly established constitutional right was being violated. Whether a constitutional right is clearly established "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." Anderson, 483 U.S. at 639. The courts must "examine the asserted right at a relatively high level of specificity." Cope v. Heltsley, 128 F.3d 452, 458 (6th Cir. 1997). "The right must have been 'clearly established' not just in an abstract sense, but in a 'particularized' sense." Id. (quoting Anderson, 483 U.S. at 640). The burden of convincing the court that the law is clearly established rests on the plaintiff. Id. at 459.

Robinson contends that the legal proposition in Kallstrom—that state actors may be liable for creating or increasing the risk that an individual will be exposed to private acts of violence—was clearly established at the time of her husband's murder. Specifically, she reasons that the contours of the underlying due process right in this case were sufficiently defined to affix liability on the officers because Kallstrom "teaches that the ***provision of information*** can underlie an increased vulnerability to danger cause of action."

We do not agree that a reasonable officer could have deduced that the conduct in this case amounted to a constitutional violation. The state-created-danger theory is potentially applicable to an infinite variety of factual settings, and as an abstract proposition, is not sufficiently concrete to provide notice to a reasonable officer in these circumstances that his conduct is unconstitutional. Nor do the facts of Kallstrom provide such notice. In that case, the City of Columbus released private information from several undercover police officers' personnel files to a criminal defense attorney, an act that jeopardized the personal safety of the officers and their families. Kallstrom's facts are not even remotely illustrative or analogous to the facts before us, except in the attenuated sense that both cases involve the "provision of information." While it is true that the precise conduct at issue in this case need not have been previously held unlawful, Chappel v. Montgomery County Fire Protection District No. 1, 131 F.3d 564, 580 (6th Cir. 1997), the legal right defined in Kallstrom is not sufficiently specific that a reasonable officer would have known that the particular conduct involved here violated clearly established law. We think the district court did not err in granting summary judgment to the defendant officers on the grounds of qualified immunity.

**III.**

In City of Canton v. Harris, 489 U.S. 378, 388 (1989), the Supreme Court held that a municipality can be liable under 42 U.S.C. § 1983 for a failure to train its officers if the inadequate training amounts to deliberate indifference to the rights of the individuals with whom the police come into contact. Robinson argues that the Township of Redford is liable for the failure to train its officers regarding the proper use of canines in detecting intruders during building searches. In this vein, she contends that the officers "violated [the decedent's] substantive due process rights by failing to use the canine unit that would have saved [the decedent's] life." She asserts that the Township's failure to train was a direct cause of her husband's death because the canine unit was available and would have averted his murder.

Robinson's claim against the Township assumes a different constitutional violation than the one she alleged directly against the officers. To support her failure-to-train claim, Robinson alleges that the officers' failure to summon the canine unit resulted in a violation of the decedent's right to substantive due process. But to establish a due process violation based upon a state's failure to protect against a private act of violence, Robinson must point to an affirmative act by the state, "not its failure to act to protect [one's] liberty interests against harms inflicted by other means." DeShaney, 489 U.S. at 200. In our view, the officers' failure to summon the canine unit is an omission, not an affirmative act, and thus does not implicate the Due Process Clause.

Whether the alleged constitutional violation is predicated on the officers' alleged assurances of safety or on their failure to summon the canine unit, Robinson's municipal claim must fail because the Township of Redford cannot be held liable under § 1983 in the

absence of a constitutional violation. <u>Watkins v. City of Battle Creek</u>, 273 F.3d 682, 687 (6th Cir. 2001). Accordingly, Robinson's failure-to-train claim was properly dismissed by the district court.

**IV.**

For the foregoing reasons, the district court's grant of summary judgment is **AFFIRMED**.